The conviction and order of the County Court must be reversed, and the defendant discharged.

Judgment of conviction of Recorder's Court, and order of County Court confirming same, reversed, and the appellant discharged. All concur, except SMITH, J., who votes for reversal and a new trial.

---

MEINRENKEN v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. March 20, 1903.)

1. RAILROADS—RIGHT OF WAY—INJURIES TO PEDESTRIANS—LICENSEES.
    Where there was a paved public way running north from a railroad grade crossing, between the railroad tracks and a river, located entirely on the railroad's right of way, a person killed by a train while on such way is a licensee only, and is not entitled to the degree of care required as to persons injured at a public crossing.

2. SAME—CONTRIBUTORY NEGLIGENCE—FINDINGS.
    Where a pedestrian came to a railroad crossing, which was blocked by a passing freight train, which emitted smoke that enveloped the crossing, and knew that a passenger train was due on the track nearest him at the same time, and that the noise of the freight train would tend to prevent his hearing the approach of the passenger train, and obscure his sight thereof, a finding that he was not guilty of contributory negligence in standing on the track on which such passenger train approached was contrary to the evidence.

3. SAME—BURDEN OF PROOF.
    In an action for the killing of plaintiff's intestate at a railroad grade crossing, the burden was on the plaintiff to show that decedent was free from contributory negligence.

4. SAME—VERDICT—WEIGHT OF EVIDENCE.
    In an action for the killing of a pedestrian at a railroad grade crossing, or on a public way near the same, a verdict in favor of plaintiff held contrary to the weight of evidence.
    Hatch, J., dissenting.

Appeal from Trial Term, New York County.

Action by Amelia S. Meinrenken, as administratrix of the estate of Gustave D. Meinrenken, deceased, against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Robert A. Kutschbeck, for appellant.
James P. Neimann, for respondent.

LAUGHLIN, J. This is a statutory action to recover for the death of plaintiff's intestate, which it is alleged was caused by the defendant's negligence. The defendant owns and operates a railroad along the easterly shore of the Hudson river from West 30th street to Spuyten Duyvil, consisting of two main tracks, with a siding upon either side, crossing 134th street. There are public highway crossings at grade at 134th and 138th streets. Between these points there is no intersecting street crossing, and the tracks run north and south in nearly a straight line close to the river, with an elevation

to the east.   The decedent was a member of the Lampe Fishing Club, which had its headquarters in a little boathouse about 200 feet south of 138th street, the westerly end of which rested on piles driven into the river bottom, and the easterly end was supported by a retaining wall extending partially along the water's edge.   The members reached the clubhouse both from 134th and 138th streets.   The width of 134th street is 60 feet, and the pavement over the crossing is 40 feet wide.   Between the tracks and the river from 134th street north to about the line of 135th street, continued, there was a paved way, used by the public to walk and drive over, but this seems to have been on the defendant's right of way.   North of this there was a bulkhead, and a narrow space or path west of defendant's tracks to the boathouse.   The club was composed principally of laboring men, who went there to fish in the evening.

The decedent had been a member for several years, and attended there frequently in the evening during this period.   He was there on the evening of·the 20th day of July, 1901; and two or three minutes before 9 o'clock, in company with another member, he started south from the club to go to his home, on Manhattan street.   There was a regular south-bound passenger train which crossed 134th street at about one minute after 9 in the evening, which seems to have become well known to the club members, and is spoken of as the "Dolly Varden."   The theory of the plaintiff is that the decedent was struck by this train.   Although there is evidence indicating that the train was going faster than usual, the undisputed evidence shows that it arrived at the station below on time that night.   The evidence shows that the decedent's body was found between the rails of the south-bound track, from 5 or 10 feet to half a car-length north of the paved portion of 134th street, which, assuming that the pavement is in the middle of the street, extends to within about 10 feet of the north line of the street; and part of the body of his companion was found about 100 feet south of the crossing, and the other part about the middle of the crossing.   The main tracks were used for both passenger and freight trains.

The only person who testifies that he saw these men after they left the clubhouse is one Smith, who was called as a witness for the plaintiff.   He says that he was fishing from the dock at 138th street from 6 o'clock in the evening until about 8, when he went down to 129th street to meet "a couple of fellows," but, not meeting them, he started back, walking on the railroad between the main tracks until he reached 134th street, where he waited simply to watch a freight train of about 60 cars pass north on the north-bound track, and not with any desire to cross to the east; that, while standing between the main tracks on the south side of the crossing at 134th street, he saw two men 10 or 15 feet north of him, coming down the paved way, which is parallel to, and west of, the tracks; that the freight train was going about 15 miles an hour, and "she was puffing pretty heavy, and the rattle of the bumpers and the chains—you couldn't hear nothing come"; that when he next saw these men they were standing side by side between the south-bound track and the westerly siding, 5 or 6 feet behind and about the same distance

to the south of him, and he saw them look north along the track; that he looked up the track, and saw the passenger train approaching; and then, contradicting himself, he states that he was not able to see either the train or headlight or hear any bell or whistle, although his sight and hearing were both good; that the night was very dark, and the smoke from the freight engine settled down on the crossing, and made it so much darker that he could not see anything, but that the smoke "was not exactly so thick" that he could not see a good headlight; that this smoky condition lasted until half the freight train had passed over the crossing, which was about the time the passenger train came; that after he looked around and saw the men, and before he had time to look north again, the passenger train went by "like a streak of lightning," and the suction of the wind threw him over against the freight train, and "by luck" he caught a bar or handle at the end of one of the cars and drew himself up on a step until the passenger train passed, when he says he dropped off before reaching a point opposite 135th street, and went back and found the bodies of the two men.

The complaint seems to have been framed upon the theory that this paved way running north from 134th street between the tracks and the river was a public way, and that the decedent was struck by the train while on it "at or near" the crossing of 134th street. If the decedent was not on the crossing of 134th street, but was walking down or alongside the tracks from the clubhouse, he was a mere licensee, at most, and the liability of the defendant would have to be determined upon principles and evidence entirely different from those in the case of an injury at a public crossing. The defendant objected to any evidence tending to show that the accident occurred on the public crossing, and excepted to the charge of the court by which the case was submitted to the jury solely upon the theory that the decedent was struck upon the crossing of 134th street. No motion was made to amend the complaint to conform to the proof. This would seem to be error, as it is very doubtful whether, under the complaint, the verdict could be sustained on the theory on which the case was thus submitted to the jury.

We are, however, of opinion that the verdict is against the weight of the evidence and contrary to the probabilities of the case. There were freight cars standing on each siding, both north and south of the crossing. If, as claimed by the only eyewitness, the decedent came down the paved way to the west of the tracks, and passed around the cars on this siding onto the paved crossing, it is inconceivable that his body should be found 5 or 10 feet, or a greater distance, north of the paved part of the crossing. Assuming that he was struck by the south-bound train, Smith at no time located the decedent anywhere near as far north as the body was found, and certainly the probabilities are that his body would not be moved north by being struck by the locomotive of a train moving south. We are of opinion that the physical facts indicate quite clearly that the decedent was struck, not upon, but north of, the crossing of 134th street, and therefore the verdict should not be permitted to stand.

. Furthermore, if the decedent was struck within the lines of 134th

street, the finding, which is implied in the verdict, that he was free from contributory negligence, is, we think, against the weight of evidence. Presumably, the decedent was aware that the passenger train was about due, and that, while a flagman was stationed at this crossing during the daytime, none was there in the evening, and that there were no gates or mechanical devices for warning people of the approach of trains. The evidence on the part of the plaintiff tends to show that no bell was rung or whistle blown on the passenger locomotive, but this was controverted. A witness who was standing on the stoop of the clubhouse testified that the headlight of the locomotive was smoky and only threw its rays about 5 feet, but he admits that he saw the headlight at 138th street, which he thought was about 250 feet distant; but a civil engineer gave the distance at 360 feet. The evidence on the part of the defendant is to the effect that this was an ordinary headlight, not dimmed or obscured; that the illumination caused by it was increased by the light in the combination car and a regular passenger coach attached to the locomotive; that the speed of the train was 15 miles an hour. Witnesses upon both sides give the startling information that the rays of light from an ordinary passenger locomotive headlight on a dark night are not observable on the track more than 20 feet ahead. The distance between the south-bound track and the westerly siding is 7 feet 3½ inches.

Assuming that the decedent came down the paved way west of the tracks and was south of the middle of the paved crossing of 134th street, where Smith places him, he must have known that he could not pass over the crossing until after the freight train passed; and, if the freight train was emitting smoke that enveloped the crossing, it was not an act of prudence or the exercise of ordinary care on the part of the decedent to step and stand upon the main south-bound track, or sufficiently near it to be struck by a passing train, when he knew that the passenger train was about due, that the noise of the freight train would tend to and might prevent his hearing any signal of the approach of the passenger train, and that the smoke would obscure, and might prevent his seeing, the headlight. Heaney v. Long Island R. Co., 112 N. Y. 122, 19 N. E. 422; Whalen v. N. Y. Central & H. R. R. Co. (Sup.) 15 N. Y. Supp. 941; Koehler v. Rochester & Lake Ontario Ry. Co., 66 Hun, 566, 21 N. Y. Supp. 844; Vahue v. N. Y. C. & H. R. R. Co., 18 App. Div. 452, 46 N. Y. Supp. 359; Piper v. N. Y. C. & H. R. R. Co., 156 N. Y. 224, 50 N. E. 851, 41 L. R. A. 724, 66 Am. St. Rep. 560.

While the extraordinary feat claimed to have been performed by Smith, in being able to seize hold and climb upon the freight train, which was passing at the rate of 15 miles an hour, after being forced against it by pressure of air caused by the passenger train, was not impossible, we think it extremely doubtful whether he would then risk dropping off the side of the freight train, going at this high rate of speed, in the dark, and accomplish all this before riding a block on the freight train. This witness testifies that the body of the decedent was found from 5 to 10 feet north of the paved crossing, and this and the other evidence on that point is not reconcilable

with his testimony as to where he saw the two men just before the accident. The burden was upon the plaintiff to show that the decedent was free from negligence contributing to his death (Wiwirowski v. L. S. & M. S. R. Co., 124 N. Y. 420, 26 N. E. 1023); and while it may be that the evidence was sufficient to require the submission of that question to the jury, which is doubtful, we are of the opinion that the verdict is clearly against the weight of evidence, and that justice requires a new trial.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., and INGRAHAM and McLAUGHLIN, JJ., concur. HATCH, J., dissents.·