Todd v. Railroad.

W. A. TODD *v.* CINCINNATI, N. O. & T. P. RY. Co.

(*Knoxville.*   September Term, 1915.)

1. **RAILROADS.** Accidents at crossings. Proximate cause. Obstruction of crossing.

The obstruction of a highway crossing by cars stopped across it is not the proximate cause of injury to a person who was struck by moving cars on another track while he was waiting to cross. (*Post, pp.* 98, 99.)

Cases cited and approved: Alabama, etc., R. Co. v. Cox, 106 Miss., 33; Du Boise v. R. R. Co., 88 Hun, 10; Jackson v. Nashville, etc., R. Co., 81 Tenn., 491; Beopple v. Railroad, 104 Tenn., 420; Selleck v. Lake Shore, etc., R. Co., 58 Mich., 195.

Case cited and distinguished: Butterfield v. Forrester, 11 East., 60.

2. **RAILROADS.** Accidents. Statute. Switching.

The statutes prescribing the precautions to be observed in the operation of trains do not apply to movements of cars during switching operations in railroad yards. (*Post, pp.* 99, 100.)

Case cited an approved: Railroad v. Pugh, 95 Tenn., 419.

3. **RAILROADS.** Accidents at crossings. Care of traveler. Continuing duty.

The duty of a pedestrian approaching a railroad grade crossing to look and listen continues so long as he is on the track. (*Post, p.* 100.)

Case cited and distinguished: Patton v. Railroad, 89 Tenn., 370.

4. **RAILROADS.** Accidents at crossings. Care of traveler. Sight and hearing.

Where either the sense of sight or of hearing is not available on approaching a railroad crossing, the obligation of a pedestrian to use the other sense is stronger. (*Post, p.* 101.)

Case cited and distinguished: Railroad v. Satterwhite, 112 Tenn., 185.

Todd v. Railroad.

5. **NEGLIGENCE. Contributory negligence. Last clear chance.**
   The rule that contributory negligence of the plaintiff will not
   bar recovery where defendant could have avoided the accident
   thereafter generally applies, in relation to successive acts of
   the parties, only to conscious misconduct of the defendant
   after discovering plaintiff's peril, not to failure to exercise
   due care to discovering such peril. (*Post, pp.* 101-105.)

   Cases cited and approved: Davies v. Mann., 10 M. & W. 546;
   Tuff v. Warman, 2 C. B. (N. S.), 740; Radley v. London, etc,
   R. Co., 1 App. Cas., 759; Dunworth v. Grand Trunk, etc., R. Co.,
   127 Fed., 307; Chunn v. City, etc., R. Co., 207 U. S., 302,
   Railroad v. Williford, 115 Tenn., 122; Railroad v. Roe, 118
   Tenn., 610.

   Case cited and distinguished: Grigsby v. Bratton, 128 Tenn., 597.

6. **NEGLIGENCE. Contributory negligence. Last clear chance.
   Simultaneous acts.**
   Where the misconduct or negligence of plaintiff is simultaneous
   with that of defendant, or the act of plaintiff has not terminated
   as a causal factor, there can be no recovery under the doctrine
   of last clear chance. (*Post, pp.* 105-108.)
   Cases cited and approved: Teakle v. San Pedro, etc. R. Co., 32
   Utah, 276; Bourrett v. Chicago, etc., R. Co., 152 Iowa, 579;
   Railway v. Haynes, 112 Tenn., 736; Inland, etc., Co. v. Tolson,
   139 U. S., 551.

7. **NEGLIGENCE. Contributory negligence. Last clear chance.
   Dangerous occupation.**
   On principles of public policy, one who is engaged in a business
   hazardous to the public, such as operating a dangerous in-
   strumentality, is required to be constantly on the lookout for
   others, and is liable for his negligent failure to keep such
   lookout, even to one who was negligent in subjecting himself to
   the danger. (*Post, pp.* 105-108.)

8. **RAILROADS. Accidents at crossings. Contributory negli-
   gence. Last clear chance. Gross negligence.**
   An adult pedestrian in full possession of his faculties who de-
   sired to cross a four-track railroad, the last track of which

Todd v. Railroad.

was blocked by stationary cars, and who stopped on the third track and engaged for several minutes in conversation with another without at any time looking up the track to ascertain if another train was approaching, was guilty of such gross negligence as to preclude his recovery, even though the railroad employees were bound to anticipate that a person might be there and negligently failed to perform their duty to look out, which negligence on their part would render the company liable for injuries to one whose contributory negligence was not gross. (*Post, pp.* 108-113.)

Cases cited and approved: Inland & Seaboard Coasting Co. v. Tolson, 139 U. S., 551; Railway Co. v. Ives, 144 U. S., 408; St. Louis, etc., R. Co. v. Schumacher, 152 U. S., 77; Ill. Cent. R. Co. v. Ackerman, 144 Fed., 959; Chunn v. City & Suburban Ry. Co., 207 U. S., 302; Rider v. Syracuse Rapid Transit Co., 171 N. Y., 139; Moore v. Phila., etc., R. Co., 108 Pa., 349; Muscarro v. Railroad Co., 192 Pa. 8; Atcheson, etc., R. Co. v. Withers, 69 Kan., 620; So. R. Co. v. Bailey, 110 Va., 833; Oliver Iowa Cent. R. Co., 122 Iowa, 222; Buckley v. Flint, etc., R. Co., 119 Mich., 583; Meinrenkin v. N. Y. Cent., etc., R. Co., 81 App. Div., 132.

Cases cited and distinguished: Quinn v. Chicago, etc., R. Co., 162 Ind., 442; Dunworth v. Grand Trunk, etc., R. Co., 127 Fed., 307; Denver City Tramway Co. v. Cobb, 164 Fed., 41; Zirkle v. Railway Co., 67 Kan., 77.

9. **RAILROADS.** Accidents at crossings. Contributory negligence. Distraction of attention.

Where a pedestrian, desiring to cross a four-track railroad, stopped on the third track to wait until the cars obstructing the fourth track were removed, and was there struck by cars moving along the third track, the fact that he was watching a train approaching from the opposite direction on the second track does not relieve him from contributory negligence, since distraction of attention excuses failure to exercise the senses only when it renders their use impracticable. (*Post, pp.* 113-116.)

Todd v. Railroad.

Cases cited and approved: Piper v. C., M. & St. P. R. Co., 77 Wis., 247; Schneider v. C., M. & St. P. R. Co., 99 Wis., 386; Koester v. C. & M. W. R. Co., 106 Wis., 460; Railroad v. Dies, 98 Tenn., 655; Wilson v. Citizens' St. R. Co., 105 Tenn., 74; Middle Tenn. R. Co. v. McMillan, 184 S. W. ——.

Case cited and distinguished: Guhl v. Whitcomb, 109 Wis., 69.

FROM SCOTT

Appeal from the Criminal and Law Court of Scott County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —XEN HICKS, Judge.

FOWLER & FOWLER and E. G. FOSTER, for appellant.

H. M. CARR, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This is an action of damages for personal injuries sustained by Todd, the plaintiff below, by reason of his being struck by cars of defendant company at a public crossing.

The trial judge in the circuit court directed a verdict in favor of the defendant railway company, but on appeal the court of civil appeals held that there was sufficient evidence adduced by the plaintiff to take the case to the jury. The cause is before us for review on peti-

tion for and grant of the writ of *certiorari,* and it has been argued at the bar of this court.

The accident occurred at Robbins, a small station on the main line of the defendant company, at a point where the highway crosses four tracks in the switchyard of the defendant company. Because of the location of a brick plant at that station much switching of cars is required over these tracks at this point. A local freight train was engaged in switching operations in this yard on the day in question, and it appears that a drawhead had pulled out of a car, with result that a cut of cars was left standing over the highway on the westernmost or fourth track, and these cars had obstructed passage by pedestrians within the limits of the highway for a period of nearly thirty minutes. Todd, a. man of about sixty years of age, on his way from the home of his son on the east side of the railroad to a barn on the west side, carrying a bag of corn, walked to the crossing, but he found it obstructed, and sat down on the steps of the depot building to await a clearance. While sitting there he says he heard the sounding of a locomotive whistle, and, thinking that the blockading cars were about to be pulled away, he started towards the crossing and passed over the first, second, and third tracks, and, putting the sack of corn down on the track, took his position on the end of the ties of the third track, where he stood engaged in conversation with another man, his face turned continuously for twenty minutes to the south. While the two men were thus standing near the yet obstructing

Todd v. Railroad.

cars, another freight train pulled into the station on the second track, approaching from the south, and Todd's attention was called to that train. While his back was turned in that direction, the engine of the first-named train, with a portion of the train of cars which had been detached from the blockading cut of cars, had been run northward to a switch and been switched from the fourth to the third track; the purpose being to take them to another switch point south of the highway and go again on the fourth track and draw the impeding cut of cars away towards the south. It may be inferred that this was due to the fact that the drawhead on the other end of the cut of cars made this necessary. Those cars on the third track proceeded under the control of the engine, but no brakeman was on the car next to the highway being approached to give warning, and it is not made to appear that Todd was seen standing in striking distance of the third track by the enginemen. The rear car thus backing from the north on the third track struck plaintiff on the right hip, throwing him to the ground and injuring him. Todd did not see or hear the approach of the engine and cars, but did not look in that direction at all, though the view was unobstructed for above 200 yards. He says:

"I never turned my head north once. After the train appeared in sight below the depot I was watching it come in from the south. When its engine moved up by me, I did not step over towards the other track.

135 Tenn.—7

I had no occasion to step off; I was looking to the south."

Todd's companion, testifying in his behalf, says that, standing by plaintiff's side, he saw the train backing from the north, and ran out in front of the north-bound train on the second track. "I told Todd I believed that he was going to get hurt if he didn't get out. I ran out to save myself. He was looking at me when I started out." Todd stated that he did not hear this admonition, but he did not deny the last statement to the effect that he looked at his companion when the latter started out of the place of peril.

Plaintiff had lived at the station for years, and was conversant with the use of the tracks, two of which were main line tracks.

The primary insistence of plaintiff is that the defendant company was guilty of negligence in obstructing the highway for something like one-half hour which should be deemed to excuse him of any charge of contributory negligence. However, the obstruction of the highway, if to be deemed negligent at all in view of the pulling out of the drawhead (*Alabama, etc., R. Co. v. Cox,* 106 Miss., 33, 63 South., 334), was not a proximate cause of the plaintiff's injuries, but only one of the conditions that remotely gave occasion for the same arising. The principle underlying found illustration in the pioneer and leading case of *Butterfield v. Forrester,* 11 East, 60, 19 Eng. Rul. Cas., 189. There plaintiff, who was riding violently, rode against an obstruction in the highway placed there negligently by

defendant. The trial judge directed the jury that, if a person riding with reasonable care could have seen and avoided the obstruction, defendant would not be liable. A rule was moved for on the authority of a passage in Buller's *Nisi Prius* to the effect:

"If a man lay logs of wood across a highway, though a person may, with care, ride safely by, yet, if by means thereof my horse stumble and fling me, I may bring action."

Lord Ellenborough, C. J., in refusing the motion, said:

"A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he did not use common and ordinary care to be in the right. . . . One person being in fault will not dispense with another's using ordinary care for himself."

In *Du Boise* v. *New York Cent. R. Co.,* 88 Hun, 10, 34 N. Y. Supp., 279, where it appeared that a traveler while waiting for a train to move off of a crossing was struck by a train on another track, it was held that the obstruction, though unlawful, was not the proximate cause of the injury. And see *Jackson* v. *Nashville, etc., R. Co.,* 13 Lea (81 Tenn.), 491, 49 Am. Rep., 663, *Beopple* v. *Railroad,* 104 Tenn., 420, 429, 58 S. W., 231, quoting *Selleck* v. *Lake Shore, etc., R. Co.,* 58 Mich., 195, 24 N. W., 774, and cases cited below.

Assuming throughout the further consideration that it was negligence on the part of the railway company to run the cars on the crossing and against the plain-

tiff without warning or signals as to its approach, we have to deal with the counter contention as to plaintiff's contributory negligence. That he was negligent in standing in a place of danger for so long a time without looking about him in order to his own safety must be equally conceded; so that, nothing else appearing, plaintiff may not recover. The train causing the injury being engaged in switching operations in the yard of the company, the statute prescribing the precautions to be observed is not applicable, and the case is to be governed by common principles under a rule familiar to the profession in this State. *Railroad* v. *Pugh*, 95 Tenn., 419, 32 S. W., 311.

This court has laid down the common-law rules applicable in the case of *Patton* v. *Railroad*, 89 Tenn., 379, 15 S. W., 921, 12 L. R. A., 184, and there the duty of one going upon a railroad track to look out for his safety was indicated to be a continuing one by this language:

"The duty to look and listen when going upon a railway track is a continuing duty so long as one continues upon it, using it as a walkway. The duty of a person so situated to continue to look out for himself, in view of the consequences likely to result from inattenton, are not less imperative than the duty of employees operating a train to look out for him. The statute not being applicable, the negligence of each (party) may appear equal, and in that case there can be no recovery."

Respecting the traveler's use of both the senses of sight and hearing in ordinary circumstances, the rule in this State is:

"A person about to cross a railroad track is bound to recognize the danger, and to make use of the sense of hearing as well as of sight—and, if either sense cannot be rendered available, the obligation to use the other is stronger—to ascertain" the approach of trains before attempting to cross. *Railroad* v. *Satterwhite*, 112 Tenn., 185, 204, 79 S. W., 106, 111.

The chief contention of plaintiff, and the one followed by the court of civil appeals, is: Assuming that plaintiff was negligent in that he manifested indifference to the conditions of increasing danger that surrounded him, yet the defendant company would be liable because plaintiff and his perilous position could have been seen by the employees of the company operating the backing train had they been in the exercise of ordinary care, and that therefore it was in their power to prevent the accident, and their failure to do so should be deemed by the law the sole proximate cause of the injury.

The doctrine of the case of *Davies* v. *Mann,* 10 M. & W., 546, 6 Jur., 954, 19 Eng. Rul. Cas., 190, decided by the English Court of Exchequer in 1842, is invoked to sustain the ruling. That case is quite commonly referred to as "the donkey case," and the donkey therein involved has been embalmed in the history of the law of negligence, his case having become a veritable storm center of disputation by courts and text-writers. The

facts in that case were: Plaintiff's donkey, the fore feet of which he had fettered, and which he had negligently allowed to graze at large upon the highway, was run down and killed by defendant's servant, who was driving a wagon "at a smartish pace," or "to fast," along the highway. "It was proved that the driver of the wagon was some little distance behind the horses," whether on the wagon seat is not stated. Lord Abinger, C. J., held that:

"As the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there."

Parke, B., concurring, added this observation:

"Were this not so, a man might justify the driving over goods left on the public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road."

It seems to us not improbable that much of the variance in views as to the soundness of that case may be attributed to the meager statement of its facts, and to the brevity of the opinions delivered by the court. It is not made clearly to appear whether the driver of the wagon saw the donkey in its hobbled condition ahead, or whether he merely could have seen it had he been in the exercise of ordinary care. The case was followed in the later cases, among others, those of *Tuff* v. *Warman,* 2 C. B. (N. S.), 740, 19 Eng. Rul. Cas., 194 (1857), and *Radley* v. *London, etc., R. Co.,* 1 App.

Cas., 759 (1876), and it may be said that the courts of England have proceeded as if *Davies* v. *Mann* sustained more than the doctrine of discovered peril—that defendant is bound by what he might have discovered in the exercise of ordinary care.

The rule of *Davies* v. *Mann,* conceived of as substantially announcing that phase of doctrine, is championed by the leading English text-writer on the law of torts, Sir Frederick Pollock (Torts [9th Ed.], 473 *et seq.*), and by another English author, Mr. Bevens, in his work on Negligence (pages 150-152).

That case, when carried to that extent, is strongly combated by Judge Thompson (1 Thomp. Neg. [2d Ed], section 231 *et seq.*), by Mr. Beach (Contributory Negligence [3d Ed.], 11 *et seq.*), and by Mr. Bishop (Noncontract Law, section 462, note 2). The decided and well-nigh overwhelming weight of the American adjudications is against *Davies* v. *Mann,* except as that case may be deemed to have announced the doctrine of discovered peril and the duty imposed on a defendant as to his acts after a consciousness thereof.

As now administered in the federal courts, it seems that the rule, except in exceptional cases later to be referred to, is settling down to a recognition of defendant's nonculpability unless in case where, aware of plaintiff's negligent exposure of himself to peril, the defendant omits reasonable care to avoid the injury. *Dunworth* v. *Grand Trunk, etc., R. Co.,* 127 Fed., 307, 62 C. C. A., 225; *Chunn* v. *City, etc., R. Co.,* 207 U. S., 302, 28 Sup. Ct., 63, 52 L. Ed., 219.

It seems also that in cases other than such excep-
tional ones this is the conception of *Davies* v. *Mann*
enforced by this court. *Railroad* v. *Williford,* 115
Tenn., 122, 88 S. W., 178; *Railroad* v. *Roe,* 118 Tenn.,
610, 102 S. W., 343. The difficulty involved in the solu-
tion of liability in a given case is in determining the
fact whether the two negligences, of plaintiff and of
defendant, are concurrent to the moment of the in-
jury; for, when this is the case, plaintiff's negligence
ordinarily is not remote, and clearly contributes as a
proximate cause, thereby disentitling him to recover.
As said in our latest case of *Grigsby* v. *Bratton,* 128
Tenn., 597, 603, 163 S. W., 804, 806:

"Assuming that defendant was negligent, we are of
opinion that plaintiff's negligence continued to operate
concurrently at the moment of the accident in pro-
ducing it; that there was no independent, self-support-
ing act of defendant that solely caused the injury, or
so came into operation as to make plaintiff's negli-
gence remote. . . .

"Where the plaintiff and defendant are thus guilty
of acts of negligence which together constitute the
proximate cause of the injury, then the negligence of
plaintiff, however slight, bars a recovery."

If during a period at or before the infliction of injury
adequate for preventive action by defendant he had
actual knowledge of plaintiff's danger and failed to
exercise ordinary care to avoid it, all authority is to
the effect that plaintiff may be awarded relief; for
then the negligence of defendant takes the color of will-

Todd v. Railroad.

fulness. Passing beyond that point, the courts are in conflict, one line of decisions requiring actual knowledge on the part of defendant, and the other requiring merely such a fair opportunity to have actual knowledge of plaintiff's peril that a prudent man would have had it. In our view *Davies* v. *Mann*, as applied to its or equivalent facts, should be construed to relate, if to successive acts, then some conscious act of misconduct on the part of the defendant in succession.

Where the acts of misconduct or negligence on the part of plaintiff and defendant are not successive, but simultaneous, in such case, or the act of the plaintiff may not be conceived of as terminated as a causal factor, there should be no recovery. Ordinarily legal causation deals with the relation of act to result, as cause to effect, and is therefore the equivalent of actual causation. But this is not invariably true, since the law of contributory negligence proceeds upon principles of public policy, which policy may, on being brought into consideration, force a modification of the normal conception of causation, so that it is "with causal relation plus some restrictive principle of policy" that the courts have to deal. In other words, in certain attitudes the public is, so to speak, treated as a third party whose rights are to be reckoned with in the result to be declared—the award or nonaward of a recovery to a plaintiff. Society is not always unconcerned as to whether the conduct of its members shall reach the standard of due care erected by the law; and that standard may tend to be attained by the assist-

ance to be given or refused by society's judicial functionaries.

It is on such considerations that cases composing an exceptional class have been determined. We refer to those instances where the defendant is engaged in a business hazardous to the public in certain aspects, such as that of operating dangerous instrumentalities, and where, therefore, the law imposes the duty on the defendant continuously to anticipate that some other (plaintiff) may negligently subject himself to a peril from defendant as a source; the latter having control of some instrumentality that has inherent potentiality of danger. Such a defendant is precedently, and continuously to the moment of injury, under the duty of lookout for the other, and his or its negligence in failing to discover the exposure of such a plaintiff and averting injury by the exercise of ordinary care is on grounds of policy considered to be proximate cause. The law in such case conceives of the negligence of the plaintiff as being remote; it may be in disregard of logic or of actual causation. It is assigned that *status* in the law's regard by reason of the policy of the law, though it may be that from the standpoint of actuality of cause the plaintiff's negligence is concurrent with the defendant's to the moment of injury. *Teakle* v. *San Pedro, etc., R. Co.*, 32 Utah, 276, 90 Pac., 402, 10 L. R. A. (N. S.), 486; opinion of Ladd, J., in *Bourrett* v. *Chicago, etc., R. Co.*, 152 Iowa, 579, 132 N. W., 973, 36 L. R. A. (N. S), 964; Patterson's Railroad Accident Law, 55.

Todd v. Railroad.

Mr. Thompson, in his work on Negligence (1 Thomp. Neg. [2d Ed.], section 232), referring to the doctrine of the above-cited leading English cases, says in this connection:

"The doctrine can have no just application in any case, except where the person inflicting the injury was under the duty of exercising care to discover the exposed situation of the person receiving the injury. If this test is kept steadily in view, it will lead us out of many difficulties and prevent much confusion. The best illustration of the principle is found in the case of the engineer of a railway train on a railroad where there are grade crossings, or where the track runs along a public street or highway, and where consequently human beings or animals are liable to get on the track. The engineer is driving the instrument of danger forward, generally at a high rate of speed. He is the actor, and the person or animal on the track is passive; he is therefore under a continuous duty of watchfulness. . . . The sound principle then is that the defense of contributory negligence is not available where the defendant was guilty of a negligent act or omission subsequently to the time when he ought to have known that the negligence of the plaintiff or of the person injured had created a situation of peril."

Quite as common and yet a more apt illustration is that of a motorman of a street car bound to vigilance with regard to the safety of those travelers who are making use of the public street on which his car is operated, and in such case this court has held that actual

discovery of plaintiff's peril is not necessary to convict the defendant company of negligence, but it is bound by what its motorman could have discovered in the exercise of ordinary care. *Railway* v. *Haynes,* 112 Tenn., 736, 81 S. W., 374. And see, generally, 2 Nellis on Street Railways (2d Ed.), section 462.

The supreme court of the United States applied the principle where a boat was approaching a wharf where passengers should have been expected to be standing. *Inland, etc., Co.* v. *Tolson,* 139 U. S., 551, 559, 11 Sup. Ct., 653, 35 L. Ed., 270.

However, notwithstanding what has just been said and the further fact that the plaintiff in the case under review at the time he was struck was in a highway, where the train employees must have anticipated persons might be, the principle is not decisive of the case in favor of the plaintiff. He was guilty of gross negligence; he knew that he could not cross over and continue his journey as a traveler on the highway; he stood in a dangerous place with his back turned towards a source of danger for an unreasonable time and disregarded the increase of dangers about him. The above principle is itself subject to a modification likewise grafted by the law for reasons of public policy. A defendant who is grossly negligent and reckless to the point of acting in disregard of the rights of others or of imputed willfulness cannot avail himself of a plea of plaintiff's contributory negligence; nor may a plaintiff who is acting so recklessly as to be in utter disregard of his own safety be heard to invoke the appli-

cation of the principle, above discussed. The law will
refuse to impose on the defendant in his behalf any
other than the doctrine of actually discovered peril.
His negligence is considered to be proximate in the
chain of causation.

A number of cases reach this result, whether based
on this reasoning or not. A few, of these will be out-
lined.

In *Quinn* v. *Chicago, etc., R. Co.*, 162 Ind., 442, 70
N. E., 526, it appeared that a pedestrian approached
a street and railway crossing, and, while standing on
or near a side track and awaiting its passing to cross,
was struck and killed by a train backing on the side
track. The court said:

''The effect of the general verdict is that the rail-
road company was negligent in moving its train west-
ward on the side track, and that no signal of the start-
ing or approach of said train was given by the ringing
of the bell, the sounding of the whistle, or otherwise.
The only question is whether negligence on the part of
the decedent contributed to produce the injury com-
plained of; in other words, do the answers of the jury
show that, as a matter of law, the decedent himself
was negligent, and that his want of care for his own
safety was one of the causes of the accident and injury.

''Railroad crossings on streets and highways have
always been recognized as places of extraordinary dan-
ger, and, when passing over the intersecting tracks,
all persons competent to exercise care for their own
protection and safety are required by the law to use

their faculties of sight and hearing, when such use is possible, and to act upon the presumption that engines or trains may be expected to pass in either direction at any moment.  It is also a matter of common knowledge that trains are often moved backward along the track, and that when running slowly they make but little noise.  The place of danger at a street crossing is upon the track, and within a short distance outside the rails.  If a traveler voluntarily or without reasonable cause stops on the track, or so near it as to expose himself to injury by passing trains, and, while in such a position of danger, fails to look in both directions and to listen for the noises which ordinarily indicate the approach of a train, and is struck by a locomotive or car negligently run upon the track, his own want of care must be held to be one of the causes of the accident, and there can be no recovery for the injury.''

In *Dunworth* v. *Grand Trunk, etc., R. Co.*, 127 Fed., 307, 62 C. C. A., 225, where a street car employee was standing at a street crossing for about three minutes on a track unobservant (except of a passing train) and was struck by another train approaching from the rear without giving signals of warning, it was said:

''It is also said that the contributory negligence of the deceased should not prevent a recovery if the locomotive engineer, in the exercise of ordinary care, might have avoided the consequence of the deceased's negligence; and this under the modification of the rule as held by the supreme court in *Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S., 551 [11 Sup. Ct., 653] 35

L. Ed., 270; *Railway Co.* v. *Ives,* 144 U. S., 408 [12
Sup. Ct., 679] 36 L. Ed., 485. There are no facts dis-
closed in this record calling for the application of the
modification of the rule. It does not appear that the
presence of the deceased upon the track was observed
by the locomotive engineer, or that after seeing him,
and after knowledge that he was unobservant of his
danger, there was time to avoid the catastrophe. To
bring the case within the modification of the rule it is
incumbent upon the plaintiff to make a showing call-
ing for its application."

In *Denver City Tramway Co.* v. *Cobb,* 164 Fed., 41,
90 C. C. A., 459, the United States circuit court of ap-
peals, through Van Devanter, C. J., said:

"It is also urged that the case is within that excep-
tion to the general rule making contributory negligence
a defense, which is known as the 'last clear chance doc-
trine.' But there are two reasons why that is not so:

"First. The exception does not apply where there
is no negligence of the defendant supervening subse-
quently to that of the plaintiff, as where his negligence
is continuous and operative down to the moment of the
injury. *St. Louis, etc., R. Co.* v. *Schumacher,* 152 U.
S., 77 [14 Sup. Ct., 479] 38 L. Ed., 361; *Illinois Cent.
R. Co.* v. *Ackerman,* 144 Fed., 959, 76 C. C. A., 13 *et seq.*

"Second. The exception does not apply when the
plaintiff's negligence or position of danger is not dis-
covered by the defendant in time to avoid the injury.
*Chunn* v. *City & Suburban Ry. Co.,* 207 U. S., 302 [28
Sup. Ct., 63] 52 L. Ed., 219; *Rider* v. *Syracuse Rapid*

*Transit Co.,* 171 N. Y., 139 [63 N. E., 836] 58 L. R. A., 125; Elliott on Railroads (2d Ed.), section 1175.''

In *Zirkle* v. *Railway Co.,* 67 Kan., 77, 72 Pac., 539, the deceased was standing in the street of the city of Leavenworth where three railway tracks crossed it, and within striking distance of the second track, awaiting there the moving of a train that obstructed the crossing on the third track. He turned his back and engaged in conversation with a companion, and did not look in the direction of cars which were moving towards him on the second track. The court, holding barring contributory negligence, said:

''In the present case the deceased turned his back in the direction from which the danger came, and was absorbed in conversation. His conduct negatived all suggestion of vigilance and showed a negligent disregard of the perils surrounding him. The fact that the freight train which struck him was standing still on what was called the storage track forty-five feet distant when he started over the crossing was not an assurance that it would remain stationary. The wheels of a railway car, adapted solely for the purposes of locomotion, are signals that the car may be moved at any time, as the wings of a bird indicate that it is prepared to fly. The indifference shown by the deceased in turning his back toward the train which ran upon him, and taking a position on the track where death or great bodily injury was inevitable if the cars moved to the place where he stood without diverting his attention from the conversation which engaged him, consti-

Todd v. Railroad.

tuted contributory negligence which cannot be excused.''

See, also, *Moore* v. *Philadelphia, etc., R. Co.,* 108 Pa., 349; *Muscarro* v. *Railroad Co.,* 192 Pa., 8, 43 Atl., 527; *Atcheson, etc., R. Co.* v. *Withers,* 69 Kan., 620, 624, 77 Pac., 542, 78 Pac., 451; *Southern R. Co.* v. *Bailey,* 110 Va., 833, 67 S. E., 365, 27 L. R. A. (N. S.), 379; *Oliver* v. *Iowa Cent. R. Co.,* 122 Iowa, 222, 97 N. W., 1072; *Buckley* v. *Flint, etc., R. Co.,* 119 Mich., 583, 78 N. W., 655; *Meinrenken* v. *New York Cent., etc., R. Co.,* 81 App. Div., 132, 80 N. Y. Supp., 1074. We believe that no case can be found that grants a recovery to an adult plaintiff, erect and in possession of his faculties, who occupies a position on a railway track under conditions similar to those that surrounded plaintiff Todd.

The plaintiff urges by way of excuse the fact that his attention was diverted to the freight train coming in from the south. Like contentions were advanced in most of the cases just above quoted or cited, but denied in terms. It is argued that our case of *Patton* v. *Railway,* supra, is authority for this insistence. In that case the person injured entered on the track after an engine and cars attached to it had passed. But another cut of cars which had accidentally broken away from the front section ran over him as he walked the track with his back to them as they came by gravity down on him. His hearing of the slight noise so made by the cars was prevented by the noise of a waterfall underneath a bridge on which deceased was at the time he was struck or about to be struck.

135 Tenn.—8 .

Here the plaintiff had the use, but made a misuse, of his faculties.

*In *Guhl* v. *Whitcomb,* 109 Wis.; 69, 74, 85 N. W., 142, 144 (83 Am. St. Rep., 889), it was well said on this question:

" 'Diversion of attention' had long before been adopted to express conditions under which the watchfulness of one traveling on a sidewalk might be relaxed consistently with ordinary care. The expression had thus acquired a meaning in the law which obviously renders it inapplicable to the duty of vigilance resting on one about to cross a railway track, which is not, like a city sidewalk, an assurance of probable safety, but, on the contrary, a proclamation of peril. The expression was used (casually, it is true) in *Piper* v. *C., M. & St. P. R. Co.,* 77 Wis., 247 [46 N. W., 165], but there it was applied to a situation where the plaintiff's attention was irresistibly withdrawn from an approaching train by attempted runaway of his team. The expression having again been used in the Ward Case, and both cases being pressed on this court in *Schneider* v. *C., M. & St. P. R. Co.,* 99 Wis., 386 [75 N .W., 169], the present Chief Justice took occasion to point out that in his use of terms in the Piper Case he applied the expression to an absolute forcing away of the attention. That term was again used to express the situation which might excuse momentary relaxation of watchfulness in *Koester* v. *C. & N. W. R. Co.,* 106 Wis., 460, 469 [82 N. W., 295]. In numerous other cases circumstances which might well satisfy the ex-

pression 'diversion of attention' have been held insufficient to excuse a failure to continually look and listen. . . ."

"The rule stated in these decisions is that the duty to look and listen is absolute where the opportunity exists. In most of these cases the exception in favor of reasonable diversion of attention was urged, and its applicability was apparent if those words be used in the sense now contended for by respondent. It is considered, therefore, that all exception to the duty to look and listen at a railroad crossing resulting from diversion of attention has been repudiated by this court, except in cases where the attention is so irresistibly forced to something else as to deprive the traveler of the opportunity to perform that duty. The rule is general and applies as well to the driver of a team as to the foot passenger, with the difference, however, that it is much more difficult to conceive circumstances surrounding the latter which can at once deprive him of the opportunity to observe and the ability to stop short of the actual peril. With him a single step, whollly under his control crosses the danger line. With the driver many things may complicate the situation—momentum, conduct of horses, multiplication of perils, and the like."

Of course, what is said in the latter portion of this excerpt from the opinion of the Wisconsin court, and also expressions used in other quotations, are to be considered, so far as local application is concerned, along with the opinions of this court in the cases of

*Railroad* v. *Dies,* 98 Tenn. 655, 41 S. W., 860; *Wilson* v. *Citizens' St. R. Co.,* 105 Tenn., 74, 58 S. W., 334; *Middle Tenn. R. Co.* v. *McMillan,* 184 S. W., —; and *Railroad* v. *Satterwhite,* supra.

Agreeing as we do with the trial judge in the disposition he made of the case, a reversal of the judgment of the court of civil appeals results. Let judgment be entered here sustaining the motion of the defendant company for peremptory instructions.