## ST. LOUIS-SAN FRANCISCO RAILWAY CO. v. FRED B. YOUNG & SON.

Western Section.   July 30, 1926.

Petition for Certiorari denied by Supreme Court January 29, 1927.

**1. Negligence.  Plaintiff guilty of contributory negligence cannot recover.**
Where the plaintiff and defendant were guilty of acts of negligence which together constituted the proximate cause of the accident, the negligence of the plaintiff bars a recovery.

**2. Negligence.  Last clear chance doctrine held not applicable.**
In an action to recover the value of an automobile where the evidence showed that the plaintiff had left the car on defendants' tracks, and a switch train of defendants was backed over the track, and the evidence further showed that none of the crew saw the truck, held that the last clear chance doctrine did not apply.

**3. Negligence.  Evidence held to show plaintiff guilty of contributory negligence.**
Where plaintiff's servant left a truck on defendants' railway tracks with no one in charge, and he knew that trains often came on that track, held that he was guilty of contributory negligence that would bar a recovery.

Appeal in Error from Circuit Court of Shelby County; Hon. R. H. Stickley, Judge.

Reversed.

Canada, Williams & Russell, of Memphis, for plaintiff in error.

Wilson, Gates & Armstrong and Kenneth Raynor, of Memphis, for defendant in error.

HEISKELL, J.  This is a suit by Fred B. Young and Frederick D. Young, doing business under the firm name of Fred B. Young & Son, against the St. Louis-San Francisco Railway Co. to recover damages for a truck destroyed by the said Railway Company.  The parties will be spoken of as plaintiff and defendant as they were in the lower court.

The firm of Fred B. Young & Son, composed of the defendants in error, was in business as general contractors, and in the fall of 1922 was building superstructure on several barges on the Mississippi River, at the foot of Illinois street, city of Memphis, Tenn.  At that time they owned a certain Oldsmobile truck which was used in their business, and which from time to time hauled materials for use in the construction on the barges, and it was driven by their employee, Walter Varner, a negro.  Illinois street is within the city of Memphis, and runs east and west, and as it nears the water's edge there is a sharp down-hill grade toward the river.  The barges were anchored about one hundred yards south of the south line of Illinois street.  The driver of the truck having material for these barges did not go to the end of the street, but when about one hundred or more feet east of the water's edge, turned south, and drove down the railroad tracks owned by the plaintiff in error, until opposite the barges, and there stopped.  The driver left the truck standing on the railroad tracks while he went down the incline to the river front to deliver certain materials at the barges.  While absent one of the trains of the plaintiff in error pushed a cut of about twenty-one cars into this track, and the truck was demolished.  There was no roadway from Illinois street down the railroad tracks to the point where the truck was parked and left unattended, but the plaintiff was using the tracks as a driveway for its convenience.  This practice on the part of plaintiff's trucks began in July, 1922, and the accident occurred in November, 1922, while the frequency of the trips was about two or three times a week.

The day of the accident the truck had made two trips before the one on which it was demolished.

Defendant insists that plaintiff's truck could have gone down Illinois street to the water's edge and there the material have been unloaded and carried south by hand to the barges.  Plaintiff, while admitting that this was possible, says it was impracticable and that the only feasible way to haul material to the barges was the way adopted by plaintiff's truck.  Other persons besides plaintiff were in the habit of driving along the same railway track and using it in the same way in order to reach the barges with material.  One of

the defendant's switching crew in charge of this train which struck plaintiff's truck had seen trucks on the same track before this time and the switching crew had stopped trains at this place to let these other trucks pull out and get out of the way of the switching trains. This witness, Walter Reese, says, "Occasionally Mr. Rainwalt would notify us that some one was back there, and we would go back and see that they got out of the way." Mr. Rainwalt was manager of the sugar products company at whose plant this accident occurred.

Adopting this route, over the defendant's track, there was no other place for a truck to stand and unload material for the barges except where plaintiff's truck was standing at the time of the collision. Other vehicles occasionally used this spot for unloading material for the barges. The trucks of the Sugar Products Company straddled the tracks of the defendant in driving into its plant, but did not stop on this track, but on its own premises.

There was no lookout on the train that demolished the truck, none of the train crew were in a position to observe the truck, and none of them knew of its presence there until after the accident.

At the conclusion of the proof the defendant moved for a directed verdict, which was refused by the court. The jury found for the plaintiff in the sum of $400. The defendant has appealed and assigned errors as follows:

## I.

"There is no evidence to support the verdict of the jury and the judgment of the court.

## II.

The court erred in refusing to grant the defendant's motion for a directed verdict at the conclusion of all of the proof, because,

(a)     Under the proof the defendant could not be required to anticipate the presence of the truck or the possibility of its presence on its tracks at the point where the collision occurred, and therefore the doctrine of discovered peril applied, rather than the doctrine of the last clear chance, as held by the court. The proof failed to show that the railroad knew of the plaintiff's perilous position prior to the collision;

(b)     The negligence of the driver of the truck in parking the same on the railroad track and leaving it unattended was so gross and reckless that it can be construed only as wilfull and deliberate, thus acting as a bar to a recovery herein."

Appellant insists that the case is controlled by the doctrine of discovered peril and not by that of the last clear chance.

The proof shows that no one of the train crew was in position to see the truck and of course to take any step to control the train and

avoid the accident. The proof also shows that any one on the lookout for the defendant could have seen the truck on the track in time to prevent an accident, if the train were under control.

Since the present case was argued this court decided the case of Illinois Central R. R. Co. v. J. J. Beaver, and an application for certiorari has been denied by the Supreme Court. The material facts in that case, as set out in the opinion, were as follows:

"At the time plaintiff received the injuries complained of he was employed by the Buffalo Construction Co., which company was erecting a large cotton seed house for the Valley Cotton Oil Co. on its property in the city of Memphis; plaintiff's duties, as a laborer on said building, consisted in part of erecting certain center and side posts for the support of the roof of the building, and was employed as a rigger. At the time of his injuries he was on or near the top of the center pole about forty-five feet high. It appears that this center pole was movable. In order to hold the center pole or post in position it was supported by guy ropes. One of the guy ropes was fastened to the railroad iron of the spur track which passed along six or eight feet north of the north end of this building. At the time of the accident resulting in the injuries to plaintiff, this guy rope was fastened to the south rail of the spur track by being passed under the rail between the ties and attached to an iron bar so as to hold the rope without passing it over the rail. It was so attached to the rail that in extending up to the post it was at such an angle as to be struck by a passing car, that is, a passing car would not clear the rope. It appears that this spur track only served the Valley Cotton Oil Co., and at the time of the injury to plaintiff the spur track was only used for bringing in carloads of materials used in the construction of the building, and in taking out the empty cars after the same had been unloaded. The building had been under construction for three or four weeks, and during which time cars were brought in on this spur almost daily, and the empty cars taken out. This guy rope supporting the center pole on which plaintiff was at work was moved or slackened frequently so as to permit the change of the location and position of the center pole, about every hour. Prior to the day before plaintiff received his injuries, this guy rope had been attached to the rail of another switch track immediately north of the track where it was attached at the time of the injury, but on the day preceding the day on which plaintiff was injured the rope had been moved and attached to the south rail of the spur that ran nearest the building being constructed and had not been moved or changed that morning. Plaintiff had been on or near the top of this center post about thirty min-

utes, when two gondola cars loaded with cinders for this plant were shunted or kicked from the lead track several hundred feet east of this building, and by their own momentum rolled down this spur track and against the rope attached to the south rail of the track, breaking the rope and causing the pole to fall, resulting in the injuries sustained by plaintiff. When these two cars were detached from the engine and shunted or kicked onto this spur track a switchman was placed on the cars for the purpose of stopping the cars at the proper place for unloading. The switchman was standing on a platform or beam between the two cars because of the location of the brakes of the respective cars, and so that he could operate the brakes of the two cars from that position. The cinders were piled on to these cars in a way so that the view of the switchman standing on the ledge or platform between the cars was so obstructed that he could not see down the track, except by leaning and looking around the edge of the front of the car.

"There was no person on the ground to observe the approach of cars bringing materials for this building, and to be on the lookout for cars coming in onto this siding. It appears that a few days before this accident, and while this guy rope was stretched across this spur track to another track immediately north, that a switching crew bringing a car of materials in on this particular spur assisted in loosing the guy rope so that the car could pass underneath it, but it is not shown that this particular switching crew knew that the guy rope was fastened to the track."

Plaintiff knew that one of the guy ropes supporting the pole on which he was at work was fastened to the railroad track in the way and manner described and was not noticing the track or the cars being switched.

Upon this state of facts this court said:

"We think that the switching crew in shunting these cars down the spur track without first ascertaining if there were obstructions on the track, and especially since the brakes of the cars were not on the front end where the brakeman could keep a proper lookout, did not exercise ordinary care and caution, and their failure so to do was negligence that contributed as one of the approximate causes of the injury to plaintiff."

But also held:

"Without a further review of the authorities and cases, we are constrained to reach the conclusion that under the undisputed facts of this case with reference to the action and conduct of the plaintiff at the time he received his injuries, when treated in the most favorable aspect for the plaintiff, and taking the

plaintiff's own testimony as to his actions and conduct, that the plaintiff was guilty of contributory negligence, and was not in the exercise of ordinary care for his own safety, and that his contributory negligence continued to the time of his injuries, and was one of the direct causes of the injuries which he sustained, together and concurrently with the negligence of the defendant. In the case of Griggsby v. Bratton, 128 Tenn., 597, 603, it is said by the court: 'Assuming that the defendant was negligent, we are of the opinion that plaintiff's negligence continued to operate concurrently at the time of the accident in producing it; that there was no independent, self-supporting act of defendant, that solely caused the injury, or so came into operation as to make plaintiff's negligence remote.'

"In the same case the court further states: 'Where the plaintiff and defendant are thus guilty of acts of negligence which together constitute the proximate cause of the injury, then the negligence of plaintiff, however slight, bars a recovery.' The above language is quoted and approved in the case of Todd v. Railroad, 135 Tenn., 95.

"We will add that we do not think the facts of this case admit of the application of the last clear chance doctrine. We cannot say under the facts of this case that the defendants were guilty of gross negligence, but as above stated, we are of the opinion that the defendant was not in the exercise of ordinary care and caution. A full and interesting discussion of the last clear chance doctrine is given in the case of Todd v. Railroad, 135 Tenn., and numerous cases cited on this subject.

"We are of the opinion, that there being no conflict in the evidence with reference to the conduct of the plaintiff at the time he received the injuries, there was no question of fact, or dispute, to be submitted to the jury. We think that under the undisputed facts as disclosed by the record, the plaintiff was guilty of contributory negligence as a matter of law which contributed concurrently with the negligence of the defendant, resulting in his injuries. In this view of the case we are of the opinion that the learned trial judge was in error in overruling and disallowing the motion for a peremptory instruction in favor of the defendants."

The instant case cannot be distinguished in principle from the case of Railroad v. Beaver, just referred to. In the present case, while the defendant was guilty of negligence, yet the plaintiff was guilty of contributory negligence continuing to the time of the accident. There is no dispute as to the fact that the driver of the truck left it standing on the track of the defendant company, where it remained without a driver until struck by the cars. This state

of facts entitled the defendant to a peremptory instruction because taking the evidence most strongly in favor of the plaintiff, the record discloses a case in which, while the defendant was negligent, the plaintiff's negligence continued to operate concurrently at the time of the accident in producing it. The plaintiff and defendant were guilty of acts of negligence which together constituted the proximate cause of the accident and the negligence of the plaintiff bars a recovery.

A great deal of argument is expended by opposing counsel for and against the contention that the last clear chance doctrine controls the case. It is sufficient to say that no reason is apparent why this doctrine should apply in the present case rather than in the case of Todd v. Railroad, 135 Tenn., 92, or in the case of Railroad v. Beaver, supra. As it was held not to control those cases, we conclude it should not be applied in the present case. Having reached this conclusion, it would serve no useful purpose to discuss the many cases in which this doctrine has been treated by the courts. The present case is not like the cases in which it has been held that the circumstances were such that the failure to keep a lookout, to discover and prevent the accident, constituted such negligence as rendered the defendant liable notwithstanding the negligence of the plaintiff and the undisputed facts are very closely analogous to those cases referred to and others that might be cited in which it is held that such obligation does not so rest upon the defendant as to fix liability, notwithstanding the contributory negligence of the plaintiff.

It is true, in the present case it is shown that on a few occasions the switching crew of defendant railroad company had been informed that there was a truck to come out from the premises of the Sugar Products Company. Such actual notice, if not heeded, would make the doctrine of discovered peril applicable, and this would have been so in the case of Railroad v. Beaver. The proof shows no precaution taken by defendant except when actual notice was given. The fact that such notice was given a very few times and that there was very seldom any cause for such notice, rather strengthens the case in favor of defendant than against it. The occupancy of the track by trucks was rare, while the switching was frequent. The defendant was using its switching track where its trains had a right to be. The truck of the plaintiff was on the railroad track, where it had no right to be. There was every reason for plaintiff to keep a lookout, rather than the defendant. Two men could have been sent with the truck so that one would have been left to remove it or notify the train crew. At least, there is nothing in this feature of the case to call for a ruling different from the Beaver case and the Todd case.

For the reasons given the assignments of error must be sustained, because the court did not give a peremptory instruction in favor of

the defendant. The case is reversed and judgment here dismissing the suit at plaintiff's cost.

Owen and Senter, JJ., concur.