KING *v.* TENNESSEE CENTRAL RAILROAD CO.

(*Nashville.*  December Term, 1913.)

1. **CARRIERS.** Accidents to persons on track. Statutory lookout and warning.

Plaintiff and his companion, desiring to board a train in the nighttime at a flag station, signaled it to stop. By reason of the fact that the signal was not given in time, the train ran about 100 yards beyond the station before it stopped. Plaintiff started down the track toward the train, but was struck by it as it was backing to the station at the rate of 3 or 4 miles an hour. The train had the usual rear lights, and the light inside the coach shown out through the glass of the rear door; but plaintiff testified that he did not see that the train was in motion until it struck him. *Held* that, in such a case, Shannon's Code, secs. 1574-1576, requiring certain lookouts on, and warnings to be given by, moving trains, does not apply, since the movement of the train in this case was a switching in its depot grounds, to which the statutes are not applicable. (*Post, pp.* 50-53.)

Code cited and construed:  Secs. 1166, 1167, 1168 (T. & S. and 1858); secs. 1547, 1575, 1576 (S.).

Case cited and distinguished:  Patton v. Railroad Co., 89 Tenn., 372.

Cases cited and approved:  Railroad Co. v. Rush, 83 Tenn., 150; Cox v. Railroad Co., 2 Leg. Rep., 168; Railroad v. Pugh, 95 Tenn., 421.

2. **CARRIERS.** Injuries to person on track. Contributory negligence.

The railroad was not liable to the plaintiff under the common law, for the plaintiff had no legal right to suppose that the company would receive him as a passenger at the point where the train first stopped, and his action in walking down to meet the train, without taking any care or precaution, was gross contributory negligence. (*Post, pp.* 53, 54.)

King v. Railroad.

FROM WILSON.

Appeal from the Circuit Court of Wilson County to the Court of Civil Appeals and by *certiorari* from the Court of Civil Appeals to the Supreme Court.— JNO. E. RICHARDSON, Judge.

WALTER S. FAULKNER, for plaintiff.

J. R. SMITH, and JULIAN CAMPBELL and LILLARD THOMPSON, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

This suit was begun in the circuit court, and was there prosecuted to judgment in favor of King for the sum of $2500 and costs. It was then taken to the court of civil appeals by the railroad company. That court reversed and remanded the cause for a new trial; and, based on that judgment, two petitions for *certiorari* have been filed in this court—one by King, insisting that the judgment of the trial court should have been affirmed; and one by the railroad company, insisting that both the trial court and the court of civil appeals were in error in not holding that it was entitled to a directed verdict, which was seasonably requested by it at the close of the evidence in chief offered by King, and again at the close of all evidence in the trial of the case in the circuit court.

The cause of action is predicated on personal injuries sustained by King as the result of a collision with a passenger coach, to wit, loss of an arm and other less serious injuries. The declaration was in two counts—the first averring a breach by the company of its common law duty; the second averring a failure on its part to observe the statutory precautions as the proximate cause of the injuries. To this declaration the company pleaded not guilty.

By the evidence of King, and otherwise, it appears that, at the time he was injured, he was living with Mr. Smith, who resided about one mile from Eagansville, a flag station on the line of the railroad company, and in company with Henry Wood, colored (King being also colored), he went to Eagansville to take passage on the passenger train bound for Lebanon, where he expected to attend a supper; that he had often prior to that time taken passage on that train at Eagansville, his habit being to go to Labanon from that station every two weeks; that he knew how to get on the train, which way was by flagging the train by means of lighting a piece of paper, which was done on the night he was injured, the flagging being done on that night by Henry Wood, who stood in the middle of the track and lighted the paper; that on the former occasions the train had always stopped at the station, but on the night he was injured it ran beyond the station about 100 yards and stopped. He saw it when it stopped, knew it had stopped, and, instead of waiting where he was until the train came back, he concluded that it was

King v. Railroad.

waiting for him, and that he would go up and board it where it stood; and so he and his companion, Henry Wood, left the station and walked up the track toward the train without notice to those in charge of the train; and the latter, expecting to find those intending passengers who had flagged the train at the flag station, began to back the train to that point, and while so backing the rear car of the train collided with King, knocked him down, cut off his arm, and otherwise injured him. No comprehensible reason is given either by King or his companion, Wood, for their failure to observe the backing train as it moved slowly back at the rate of three or four miles an hour to the flag station. It was after dark; the back door of the rear car was open; there were lights in the car. King and his companion do not deny these facts, and yet they say they did not see the rear car as it backed down the track toward them; and King says that the first knowledge he had of its movement toward him was when it struck him. He testifies that after his injuries, and manifestly while the car was still in motion, he crawled out from under it, and laid beside the track while the train passed on, and while it stopped at the flag station; and while, after it stopped at the flag station, it again started on its way to Lebanon, during all this time he was lying close to the rails, where he had received his injury.

King testifies that the point where he was struck by the train was "mighty nigh 100 yards" from the flag station. He admits that he made no outcry to attract

the attention of employees in charge of the train when he received his injury, while the train passed on its way to the flag station, and during its stop at the flag station, or during the time the train passed him after it stopped at the flag station on its way to Lebanon. His companion Henry Wood, also admits that he in no way made his presence known to the train crew during the time the train was making the movements aforesaid. He testifies that, when the train struck King, he (Wood) sprang from the track, and thus escaped injury; and after the train had gone on its way to Lebanon, he found his injured companion, and with him went back to the farm of Mr. Smith about one mile from the flag station, where King had been living, and where during the same night King received surgical attention.

The failure of King and Wood to make known to the employees in charge of the train the injuries which King had received is entirely unexplained upon this record. The explanation which King offers is that he was in misery. No such explanation can be offered for Wood, and so far as King is concerned, it is an explanation which does not explain. Their apparent concealment of their presence, and of the injury which King had sustained, at a time when he was manifestly in desperate need of immediate surgical attention, brings seriously into question the truth of their entire evidence in the cause.

The flagman on the train testifies in substance that he was on the rear end of the rear car as the train was

King v. Railroad.

backed toward the flag station with a white light in his hand, and that, as the train backed, the air whistle on the rear end was blown at short intervals from the time the train started backing until it reached the station; that during all this time he was looking ahead to see if anyone was on the track and saw no one; that he could see some ten or twelve feet down the track by means of the reflection from the light in his hand and of the light from the rear coach; that there were lights on the rear of the train, which showed red from the rear and green from the front; that the inside of the coach was lighted; that the rear door of the rear coach was glass above the handle; that when the train, upon backing up, reached the flag station, it stopped, and that he was still on the rear platform; that nobody got on at the flag station, and the train pulled out therefrom.

His evidence is corroborated on most of these points by other employees in charge of the train, but the evidence of these witnesses was contradicted by evidence introduced on behalf of King; but it is undisputed in the record that the train was backing very slowly toward the station, the rate of speed being not more than three or four miles an hour. King says "it was eased along."

The first point for decision under these facts is whether the rights of the parties to this suit should be determined under sections 1166, 1167, 1168, of the Code of 1858, now appearing as sections 1574, 1575, 1576,.

129 Tenn. 4

Shannon's Code or whether such rights are to be determined according to the principles of the common law.

We think the statutes above mentioned do not apply in the present case.

In *Patton* v. *Railroad Co.*, 89 Tenn. (5 Pickle), 372, 15 S. W., 919, 12 L. R. A., 184, where the person injured was walking upon the track, and was overtaken by a train of freight cars, and stepped aside until the train passed, when he returned to the track and resumed his journey in the rear of the train which had passed him, and was overtaken and killed by some freight cars which had belonged to the train which had just passed him, but had become detached therefrom, and were following downgrade at the time of the injury, this court, speaking through Judge Lurton, held that the statutes above mentioned did not apply, saying: "The case provided for by the statute is that of a train pulled by a locomotive, and the precautions are those required to be observed by those servants upon the engine, and have regard to obstacles on the track in front of or ahead of the engine," etc.

In *Railroad Co.* v. *Rush*, 83 Tenn. (15 Lea), 150, construing these statutes, it was pointed out by Judge Cooper, speaking for this court, that in view of the stringent terms of the statutes and the manifest object of the legislature the court had not extended their provisions to every case which might be embraced in their general language; and it was there said that the statutes were intended for the benefit of the general pub-

lic, and not for the servants of the company whose negligence caused or contributed to cause the accident. Cases illustrative of the exceptions to the operation of the statutes are cited in the opinion, and it is there noted that the statutes do not apply for the benefit of a stranger when the company is making up a switching train within its yards; the case of *Cox* v. *Railroad Co.*, 2 Leg. Rep., 168, 1 Shan. Cas., 475, being cited to sustain the point.

The case of *Railroad* v. *Pugh*, 95 Tenn. (11 Pickle), 421, 32 S. W., 311, is very much in point. There the plaintiff relied in his declaration upon an averment that he was struck and seriously injured by certain detached cars of the defendant while he was walking between the sidetrack and depot platform at Charleston, and that the collision and injury resulted from the making of a running switch, by which the cars were driven by the depot at an excessive rate of speed, having no one on the lookout ahead. This court, in disposing of that case, held that the statutory precautions did not apply, in cases where employees of a railroad company were engaged in the distribution of cars "in the 'making up' of trains, and in other necessary switching in and upon its yards, depot grounds, and sidetracks;" the reason given for the ruling being that "it is not possible, in such cases, to have the engine always in front of the moving portions of the train, yet the doing of the things indicated is absolutely indispensable to the efficient operation of railroads."

We think the present case falls clearly within the principle announced in the case last above referred to. In that case, as above shown, the injury occurred to one not an employee of the company, but who was at the time of receiving the injury at one of the depot places of the company. In the present case, the movement of the train by which King was injured was, within the meaning of our cases, a movement of the train at one of the depots of the company. The station at which the injury occurred was, to be sure, a flag station; but this fact can make no difference in the application of the principle. To that station King had gone for the purpose of taking passage upon the train which injured him. To his signal given at that station the engineer of the train had responded by stopping the train. It is an undisputed fact in the record that the failure to stop in the first instance immediately at the flag station was due entirely to the fault of complainant and his companion, who gave the signal to the engineer when the train was only 150 feet from the station, and after receiving the signal the train was stopped as soon as practicable. It is also clear that, in obedience to this signal which the engineer had received, the train at the time of the injury was backing to receive as passengers King and his companion, who had given the signal.

King had no legal right to suppose that the company would accept him as a passenger at a point 150 yards beyond the platform, where he says the train stopped in obedience to his signal; nor had he the right

to act upon this supposition, in the absence of an express invitation of the company so to do. It was the right of the company to select the place where it would receive King as a passenger.

The movement of the train backward from the point where it first stopped was, within the meaning of *Railroad* v. *Pugh,* supra, a switching in and upon its depot grounds, and in the execution of that movement, and in the injury which King suffered, the common law, and not the statutes, measure the rights of the parties. It is clear that the legislature, in the passage of the statutes, never intended them to apply to a case like this. In proper cases for their application the statutes are wise and beneficient, but to apply them here would work a gross and manifest miscarriage of justice.

Turning now to a consideration of the rights of the parties under the principles of the common law, we hold that under the facts of this record the gross negligence of King was the proximate cause of the injuries which he received. Had he remained at the flag station, as it was right and his duty to do, his signal would have been obeyed, and he would have been able to board the train without injury. We have already observed that he had no right to suppose or act upon the supposition that the company would receive him as a passenger at the point where the train first stopped.

His act in abandoning a place of safety, walking down to meet an approaching train, without heed or care apparently of the consequences, can only be char-

acterized as one of gross negligence, and clearly the proximate cause of his injuries.

It results that the company was entitled to the peremptory instruction which it requested at the trial of this cause, and therefore the petition for *certiorari* filed by King is denied. The petition of the company is granted, the judgment of the court of civil appeals is reversed, and the suit dismissed at King's cost.