CHATTANOOGA STATION CO. *v.* A. L. HARPER.

(*Knoxville*. September Term, 1917.)

1.  **RAILROADS.  Actions for injuries.  Pleading.**

In an action against a terminal railway company for injuries, a
declaration alleging that defendant unlawfully, wrongfully, and
negligently ran one of its engines into and against plaintiff,
injuring him as therein set forth, was drawn under the statute
and invoked the application of the precautions prescribed by
statute for the prevention of accidents on railroads.  (*Post*,
*pp.* 576-578.)

Cases cited and approved:  Railroad v. Binkley, 127 Tenn., 77;
Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 415; Rail-
road v. Davis, 104 Tenn., 444; East Tennessee, etc., R. Co. v.
Pratt, 85 Tenn., 9; Middle Tennessee R. R. v. McMillan, 134
Tenn., 490; Whittaker v. Railroad, 132 Tenn., 576; Railroad Co.
v. Robertson, 56 Tenn., 276; Haley v. M. & O. R. R. Co., 66
Tenn., 239; Taylor v. Railroad Co., 93 Tenn., 305; Railroad Co.
v. Pugh, 95 Tenn., 419; Railroad v. Martin, 113 Tenn., 286;
Todd v. Railroad, 135 Tenn., 92; King v. Railroad, 129 Tenn.,
44; Railroad Co. v. Dies, 98 Tenn., 655; Railroad Co. v. Wil-
son, 90 Tenn., 271.

2.  **RAILROADS.  Actions for injuries.  Burden of proof.**

Where plaintiff in an action against a railroad company for in-
juries invoked the application of the statutory precautions for
the prevention of accidents, defendant was bound to prove a
strict compliance with the statutory precautions.  (*Post*, *pp.*
576-578.)

3.  **RAILROADS.  Injuries to persons on track.  Precaution
against injury.  "Switching operation."**

Where a terminal railway company nightly moved a sleeping
car from the station of the N. Railway to its own station, where
it was picked up by another company, and for such purpose

Chattanooga Station Co. v. Harper.

ran its engine about half a mile on its own track to the junction of its track with that of the N. Company and then backed down the N. Company's track about a mile and a half to that company's station, and while so backing within the station limits of the N. Company ran into plaintiff, it was engaged in a "switching operation," even though the N. Company was not accustomed to use the tracks in question at that point for switching purposes and the precautions prescribed by statute for the prevention of accidents did not apply. (*Post, pp.* 576-578.)

4. **RAILROADS. Injuries to persons on track. "Trespasser."**

An employee of a railway company, engaged in inspecting the cars of his employer to discover whether any of them had been broken into or any seals on the doors tampered with and directed by his employer to also examine cars on the tracks of another company when observed on their way over such tracks to his employer's tracks, but not authorized by the other company to go on its tracks for such purpose, was a "trespasser" on such tracks. (*Post, pp.* 578, 579.)

Cases cited and approved: Railroad Co. v. Holland, 117 Tenn., 257; Railroad v. Finley, 122 Tenn., 134; Cox v. Railroad, 1 Shan. Cas., 475; Todd v. Railroad, 135 Tenn., 100; Railroad v. Fair, 80 Tenn., 35.

5. **RAILROADS. Injuries to persons on tracks. Liability to trespassers.**

That a person injured in the yards of a railroad company, where the company is engaged in switching, is a trespasser on the track, will not prevent a recovery; the rule as to trespassers in such case being the same as the rule respecting employees of the company. (*Post, pp.* 578, 579.)

6. **RAILROADS. Injuries to persons on track. Precautions against injury.**

By the common law it is the duty of a railway company's employees on an engine to keep a lookout ahead, and have reasonable appliances including a headlight of reasonable efficiency, and on the appearance of any obstruction on the track to use

their utmost endeavor to prevent a collision, and also to see what could be seen by a person of good eyesight with the aid of a proper headlight or a proper light on the back of the engine when running backwards.  (*Post, pp.* 579-581.)

Cases cited and approved:  Horne v. Railroad, 41 Tenn., 72; Railroad v. Humphreys, 80 Tenn., 200; Railroad v. Flemming, 82 Tenn., 139; ..ailroad v. Pratt, 85 Tenn., 9; Railroad v. Seaborn, 85 Tenn., 397; Railroad v. Scott, 87 Tenn., 499; Patton v. Railroad Co.,, 89 Tenn., 370; Katzenberger v. Lawo, 90 Tenn., 237; Railroad v. Wilson, 90 Tenn., Cotton Oil Co. v. Shamblin, 101 Tenn., 271; Rapid Transit Co. v. Walton, 105 Tenn., 422; Railroad v. Crews, 118 Tenn., 52;. Whittaker v. Railroad, 132 Tenn., 580; .Todd v. Railways Co., 135 Tenn., 92; Railroad Co. v. Parks, 136 Tenn.,, 367.

7. **RAILROADS.**  Injuries  to  person  on  track.  Contributory negligence.

A railway employee on the tracks of another company where switching was done and cars were being constantly transferred to other roads was bound to constantly look and listen to avoid the danger of a collision, especially at night, and where he did not look and listen he was guilty of contributory negligence.  (*Post, pp.* 579-581.)

8. **NEGLIGENCE.**  Railroads.  Injury  on  track.  Contributory negligence.  Effect.

Where the statute prescribing precautions that railway companies shall use to prevent collisions applies to an injury on the track, the contributory negligence of the injured person can only be taken in mitigation of damages; but, where the rights of the parties are to be settled by the common law, such negligence, contributing proximately to the injury eithei alone or in conjunction with that of the railroad company, defeats a recovery.  (*Post, pp.* 579-581.)

9. **RAILROADS.**  Injury  on  track.  Contributory  negligence. Effect.

Where the negligence of a railway company was the proximate cause of an injury to a person on the track, and that of the

Chattanooga Station Co. v. Harper.

injured person on the track, and that of the injured person contributed only remotely, then such contributory negligence can be used only in mitigation of damages; but, if the negligence of the injured party was gross, the rule is otherwise, though in the absence of such degree of negligence the negligence of the railway company would be treated as the proximate cause. (*Post, pp.* 579-581.)

10. **RAILROADS.** Injury on track. Contributory negligence. Effect. "Gross Negligence."

The negligence of a person on a railroad track within station limits on a very dark night in failing to look or listen was "gross negligence," preventing a recovery. (*Post, pp.* 581, 582.)

11. **RAILROADS. Operation. Rate of speed.**

A city ordinance, providing that any engineer or other person in in charge of an engine who should run it at a greater rate of speed than those therein specified should on conviction be fined, applied to the railway company itself as well as engineers. (*Post, pp.* 582, 583.)

Cases cited and approved: Railroad Co. v. Haynes, 112 Tenn., 712; Grube v. Missouri Pacific R. Co., 98 Mo., 330.

12. **RAILROADS. Operation. Rate of speed.**

A city ordinance prescribing a rate of speed for railway engines of six miles an hour, but providing that from and southeast of K. street trains and cars might be run at a rate of speed not exceeding thirteen miles an hour, applied to railroad tracks lying immediately southeast of K. strc ', where the duties of railroad employees required them to go, and was not limited in its operation to public streets and public places. (*Post, pp.* 582, 583.)

13. **APPEAL AND ERROR.** Review. Presumptions. Peremptory instruction.

Where, in an action for injuries to a person on a railway track, there was conflicting evidence as to an alleged violation of a spee ordinance, the supreme court must hold that the ordinance

was violated in determining whether a motion for a peremptory instruction should have been granted.  (*Post, pp.* 583, 584.)
Cases cited and approved:  Queen v. Dayton Coal & Iron Co., 95 Tenn., 458; Rider v. Grimm Bros., 97 Tenn., 220; Wise & Co. v. Morgan, 101 Tenn., 273; Rhea County v. Sneed, 105 Tenn., 581 Iron & Wire Co. v. Green, 108 Tenn., 161; Railway Co. v. Haynes, 112 Tenn., 712; Railroad v. Martin, 113 Tenn., 266; Adams v. Iron Co., 117 Tenn., 470; Schmalzried v. White, 97 Tenn., 36; Weeks v. McNulty, 101 Tenn., 495.

14.  **RAILROADS.**  Injuries to person on track.  Rate of speed.  ''Negligence per se.''

The running of a railway engine at a rate of speed in excess of that permitted by an ordinance was "negligence *per se.*"  (*Post, pp.* 583, 584.)

15.  **RAILROADS.**  Injuries to persons on track.  Contributory negligencce.

Contributory negligence has the same effect to defeat an action for injuries in the case of a violation of a speed ordinance in the operation of a railway engine as in the case of a failure to perform the common-law duty of keeping a lookout and using endeavors to prevent a collision after the discovery of an obstruction on the track.  (*Post, pp.* 583-584.)

16.  **APPEAL AND ERROR.**  Review.  Matters not passed on below.

In an action for injuries sustained on a railroad track, where the trial court ruled that the statutory precautions did not apply and withdrew that question from the jury but submitted the case on the common law and on a city speed ordinance, and the jury returned a verdict for plaintiff, the court of civil appeals, on reaching the conclusion that the statutory precautions did apply and that plaintiff's contributory negligence therefor was not a bar, could not determine the question withdrawn from the jury as to whether the statutory precautions had been complied with, the evidence being conflicting, and affirm the judgment so far as it fixed defendant's liability re-

Chattanooga Station Co. v. Harper.

versing it only for a new assessment of damages, but could only pass on the question of the statutory precautions in reviewing the overruling of a motion for peremptory instructions or the withdrawal of such question from the jury, since, while a juc_ ent may be affirmed in part and reversed in part, the court of civil appeals did not affirm any part of the action of the trial judge nor of the judgment based on the jury's verdict. (*Post, pp.* 584-588.)

Case cited and approved: Perkins v. Brown, 132 Tenn., 294.

FROM HAMILTON

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from that Supreme Court.— NATHAN L. BACHMAN, Judge.

THOMPSON, WILLIAMS & THOMPSON, for appellant.

FLEMING & SHEPHERD, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This was an action brought in the circuit court of Hamilton county to recover damages for injuries inflicted on the defendant in error by the engine of the plaintiff in error. There was a verdict of $10;000 in favor of the defendant in error, and judgment thereon. After the plaintiff in error's motion for a new trial had been overruled, it appealed to the court of civil appeals. There the judgment was reversed and the

cause remanded for a new trial. That court, however, fixed the liability of the plaintiff in error and restricted the remand only to the amount of damages. The case was then brought to this court by the writ of *certiorari* by both the plaintiff in error and the defendant in error; the latter insisting there should have been an affirmance, the former that there should have been a complete reversal, and either a dismissal of the case or an unlimited new trial.

The declaration, as originally drawn, consisted of only one count. This averred, omitting the formal parts, that, on the——day of November, 1913, near East End avenue, in the city of Chattanooga, "defendant" (plaintiff in error) "unlawfully, wrongfully, and negligently ran one of its engines into and against and over plaintiff" (defendant in error), "whereby and on account of which, the plaintiff was bruised and mangled," etc., describing the nature of his injuries, and averring great pain of body and mind.

Subsequently, by leave of the court, this count was amended so as to specify other special damages, among them the following:

"Plaintiff suffered so much from his amputated arm that the doctors gave him morphine and other drugs in an effort to lessen the pain. As a result of such treatment plaintiff has become addicted to the drug habit and is now using a large quantity of morphine each day."

A second count was added which, after repeating the language of the first court, continued:

"Said collision occurred within the corporate limits of the city of Chattanooga, a municipal corporation organized under the laws of Tennessee. At the time there was in force an ordiance of said city of Chattanooga providing that 'any engineer or other person in charge of an engine with or without cars attached who shall run the same through any part of the city at a greater rate of speed than six miles an hour shall, on conviction, be fined not less than $10, nor more than $50, provided that from and south of Montgomery avenue and from and southeast of King street, trains and cars may move and be run at a rate of speed not exceeding thirteen miles per hour.' The point where plaintiff was struck, as aforesaid, is southeast of King street in said city, and within the district where trains and cars may lawfully move at the rate of speed not in excess of thirteen miles per hour. Plaintiff avers that the said engine, at the time it struck him, was running at a high and reckless rate of speed, to wit, more than thirteen miles per hour, and in violation of the said ordinance of the city of Chattanooga aforesaid. The plaintiff avers that the unlawful speed of such engine, in violation of said city ordinance, was the proximate cause of said collision, and his resulting injury."

The plaintiff in error interposed a demurrer to so much of the declaration as charged addiction to the morphine habit, on the ground that this habit was not the proximate result of the injury, as appeared from

the declaration, but resulted wholly, or in part, from
a separate, intervening cause for which the plaintiff in
error was not responsible. This intervening cause, as
indicated in the argument at the bar, was the independ-
ent will of the defendant in error. In the view we take
of this case it will not be found essential to a correct
disposition of the main controversy to decide the mer-
its of this question. Therefore we shall not again refer
to it.

That part of the declaration which alleged the viola-
tion of the ordinance was demurred to on the ground
that the ordinance was directed only against an
engineer, or other person in charge of an engine, and
made it a misdemeanor for such persons to propel the
engine at a greater speed then that mentioned therein;
that it had no application to any other person or per-
sons—that is, that it was not directed in terms against
plaintiff in error or any railroad company. Another
ground of demurrer was that the ordinance applied
alone to public streets and other public places, and not
to railroad yards, and it was not alleged that the ac-
cident happened in any of the places to which the or-
dinance applied.

Both grounds of demurrer were overruled. We shall
presently consider these matters in connection with
other questions which arose on the trial.

The evidence, so far as necessary to be stated, was,
in substance, as follows:

The plaintiff in error is a terminal company located
in Chattanooga, and employed by several of the rail-

roads centering at that point in performing the kind
of services .such a company is chartered for. The
particular service out of which the present controversy
arose had its origin in the fact that the Nashville,
Chattanooga & St. Louis Railway Company had been
accustomed for a long time to transport from Nash-
ville, Tenn., to Chattanooga a. sleeping car, known as
the "Jersey sleeper." This car was bound for Jersey
City, in the state of New Jersey. It was left at the Union
Depot in Chattanooga each night by the train of the
Nashville, Chatanooga & St. Louis Railway Company.
The latter company employed the plaintiff in error to
transfer this car from its Union Depot to the station
of the said Chattanooga Station Company in order that
it might there be picked up by the Sourthern Rail-
road Company and the journey of the car completed
to Jersey City by the latter road. This car was ac-
customed to arrive in Chattanooga about 3:30 o'clock
at night. In performance of its duty, the plaintff in er-
ror, every night, was accustomed to make the trans-
fer above mentioned. On the night in question the
plaintiff in error sent its engine along its own track
in a northeasterly direction to a point near East
End avenue, in the city of Chattanooga, where it con-
nected with the track of the Nashville, Chattanooga
& St. Louis Railway Company, or Western & Atlan-
tic Railroad, which is a part of the Nashville, Chatta-
nooga & St. Louis Railway Company system. After
reaching the track of the Nashville, Chattanooga &

St. Louis Railway Company, the plaintiff in error's engine had to proceed west, and in doing so had to back in that direction with its tender forward. The junction of the plaintiff in error's track and that of the Nashville, Chattanooga & St. Louis Railway Company, where the backward movement was begun was about one and one-half miles from the Union Depot. In making the transfer of the sleeper it was necessary for the plaintiff in error's engine to proceed from its own station along its own track northeastwardly a half mile until it reached this junction of its track with the track of the Nashville, Chattanooga & St. Louis Railway Company. Having reached this point plaintiff in error's engine then proceeded backing down this track to a point about three hundred and fifty feet west of the Belt Railway line (which is only a short distance west of East End Avenue), where it ran upon and injured defendant in error. The point where the injury occurred was within the station limits of the Nashville, Chattanooga & St. Louis Railway Company, within which limits, according to one witness, the Nashville, Chattanooga & St. Louis Railway Company makes up its trains that go out from the Union Depot; but there is also one witness who testifies that no switching is done on these tracks. It is not denied that all trains, or cars, from the Union Depot or the Craven yards of the Nashville, Chattanooga & St. Louis Railway Company destined for the Southern Railway Company or the Cincinnati,

New Orleans & Texas Pacific Railway Company are delivered over these tracks. The conflict just noted in the evidence is immaterial, depending as it does wholly on the views of the different witnesses as to what is a switching operation, a question which we must determine from our cases, there being no conflict in the evidence as to the movements made by the engine in question in transferring the sleeper from one track to the other in the present case.

The defendent in error, when he received the injury, was standing on the track of the Nashville, Chattanooga & St. Louis Railway Company in company with one Angel. Defendent in error says that he looked along the track at the time he entered upon it, but did not afterwards look, nor does he testify that he listened for an engine or train. The coming of the engine was discovered by Angel, who saved himself by a sudden movement, at the same time warning the defendent in error. The latter jumped, but the engine struck him before he could get out of its sweep. There were several persons on the engine besides the engineer and fireman, these other persons constituting a part of the crew that attended the engine. No one on the engine discovered the defendant in error, or knew that he had been injured. So the engine proceeded westward and returned with the sleeper. Knowledge of the injury being then communicated to those in control of the engine, the defendant in error was removed from the track and transported to a safe place on the sleeper.

The defendant in error and Angel were employees of the Cincinnati, New Orleans & Texas Pacific Railway Company, whose track was some eighteen feet northward from that on which the accident occurred. Their duties were to inspect the cars of the Cincinnati, New Orleans & Texas Pacific Railway Company at night to discover whether any of them had been broken into, or any seals on the doors had been tampered with. Plaintiff in error testified that he had been instructed by his superior to make such examination on the tracks of the Nashville, Chattanooga & St. Louis Railway Company in case any cars should be observed on their way over the tracks of the company just named to those of the Cincinnati, New Orleans & Texas Pacific Railway Company; that on the night in question he and Angel had been engaged in their work of inspection on the lines of their employer, from Citico, some miles further east, down to the point where the accident occurred; that they had been walking between the tracks of the Nashville, Chattanooga & St. Louis Railway Company, because it was better walking there, until near the place where the injury occurred; that when they reached the place near where he suffered the injury they met an engine and four cars on the Nashville, Chattanooga & St. Louis Railway Company track going east; that they then got upon the adjoining track of the Nashville, Chattanooga & St. Louis Railway Company; that the cut of cars referred to was, as they both knew designed for the tracks of their employer; that he and Angel, both having flash lights,

stopped to inspect these cars, looking at the seals as the cars moved slowly by; that cars were delivered from the Nashville, Chattanooga & St. Louis Railway Company to the Cincinnati, New Orleans & Texas Pacific Railroad Company every night about this time; that defendant in error was not actually using his own flash light, but that Angel was using the one he had, and the inspection was thus proceeding; that the injury occurred while they were so engaged; that the night was very dark. Angel testified, not that they had been instructed to inspect cars while on the track of the Nashville, Chattanooga & St. Louis Railway Company, but that such had been their custom for quite a while. There was no evidence of any authority given by the Nashville, Chattanooga & St. Louis Railway Company, for such entry upon that company's tracks, and it seems from the evidence that the employees of the Nashville, Chattanooga & St. Louis Railway Company, on the cut of cars referred to, had no knowledge of such alleged custom.

There was evidence introduced in behalf of the defendant in error, that the storm curtains were down, and no one was seen inside the engine; that no whistle was blown, no bell rung, and no attempt to stop the engine that inflicted the injury. All the witnesses except one testify that there was a light on the rear of the engine; that one testified that he did not see any, but does not positively deny that there was one. The witnesses for the defendant in error testify that the headlight was very dim, that it was an oil light, and badly smok-

ed. The witnesses for plaintiff in error testify that it was a reasonably good light; also, that all of the switch engines on the various roads entering in Chattanooga used coal oil lights. These witnesses further testified that the engineer and the fireman were both on the lookout, and the latter testified that, though on the lookout they did not see the plaintiff in error. They denied that the storm curtains were down. It was also proven that, even if they had been down, there was a window in the curtain through which a lookout could be kept up.

The accident occurred within the station limits of the Nashville, Chattanooga & St. Louis Railway Company at a point remote from any street of the city which crossed the track. There was no street between East End avenue and the Union Depot, except Market street, and King street, which were distant from each other only one block, and both of them far from the place of the injury. The accident occurred a considerable distance east of both of these streets.

The first question to be determined is whether there should have been a peremptory instruction in compliance with a motion to that effect made in the trial court by the plaintiff in error.

The declaration, as drawn, in the first count, is clearly under the statute, invoking the application of the precautions prescribed by the statute for the prevention of accidents on railways. Similar language has been so construed in several cases. *Railroad* v. *Binkley,* 127 Tenn., 77, 80, 81, 153 S. W., 59; *Chattanooga*

*Rapid Transit Co.* v. *Walton,* 105 Tenn., 415, 418, 58 S. W., 737; *Railroad* v. *Davis,* 104 Tenn., 444, 58 S. W., 296; *East Tennessee, etc., R. Co.,* v. *Pratt,* 85 Tenn., 9, 15, 1 S. W., 618; *Middle Tennessee R. R.* v. *McMillan,* 134 Tenn., 490, 503, 184 S. W., 20; *Whittaker* v. *Railroad,* 132 Tenn., 576, 580, 581, 179 S. W., 140. So, nothin else appearing, the plaintiff in error would have been bound to prove a strict compliance with the statutory precautions. However, if it were engaged in a switching operation these statutes would not apply, but the rights of the parties would have to be determined by the common law. *Railroad Co.* v. *Robertson,* 9 Heisk, (56 Tenn.), 276; *Haley* v. *M. & O. R. R. Co.,* 7 Baxt. (66 Tenn.), 239, 244; *Taylor* v. *Railroad Co.,* 9 Pick. (93 Tenn.), 305, 306, 27 S. W., 663; *Railroad Co.,* v. *Pugh,* 11 Pick., (95 Tenn.), 419, 32 S. W., 311; Clarkson's Case, cited in *Railroad* v. *Martin,* 113 Tenn., at page 286, 87, S. W., 418; *Todd* v. *Railroad,* 135 Tenn., 92, 100, 185 S. W., 62, L. R. A., 1916E, 555; *King* v. *Railroad,* 129 Tenn., 44, 51, 53, 164 S. W., 1181, 51 L. R. A., (N. S.), 618. We are of the opinion that the plaintiff in error was engaged in a switching operation. The cases cited in opposition to this conclusion. (*Railroad Co.* v. *Dies,* 98 Tenn., 655, 41 S. W., 860; *Railroad Co.* v. *Wilson,* 90 Tenn., 271, 16 S W., 613, 13 L. R. A., 364, 25 Am. St. Rep., 693; *Railroad Co.* v. *Martin,* 113 Tenn., 266, 274, 286, 87 S. W., 418) do not apply. This is apparent from a comparison of the facts of these cases with the facts of the cases previously cited. It is not material whether the Nashville, Chattanooga & St.

138 Tenn—37

Louis Railway Company was accustomed to use the tracks in question, generally, for switching purposes —a point, as we have seen, which is both affirmed and denied in the evidence. It suffices that the special operation in question was a switching operation, was within the station limits of the Nashville, Chattanooga & St. Louis Railway Company, and was a customary operation, nightly, within the limits mentioned by the plaintiff in error under authority of the Nashville, Chattanooga & St. Louis Railway Company, the owner of the two tracks which were used on the night when the injury occurred.

Plaintiff in error was operating on the track of the Nashville, Chattanooga & St. Louis Railway Company, in the employment of that company, and would have the same rights as that company would have if it had itself been engaged in transferring the sleeping car in question from its own railroad to that of the Southern Railway Campany. If the Nashville, Chattanooga & St. Louis Railway Company had been engaged in the same operation, and the defendant in error had been its servant, the statute would not apply likewise for that reason. *Railroad Co.* v. *Holland,* 117 Tenn., 257, 96 S. W., 758, and other cases cited in *Railroad* v. *Finley,* 122 Tenn.; at page 134, 118 S. W., 692, 18 Ann. Cas., 1141. But the defendant in error was not the servant of the Nashville, Chattanooga & St. Louis Railway Company, and was not on that road by authority of that company, and therefore must be considered as

a trespasser, notwithstanding his own employer had ordered him over there, it not appearing that his employer had any such authority over the property of the Nashville, Chattanooga & St. Louis Railway Company. But the rule as to trespassers injured in the yards of a railway company while the company is switching is the same with respect to a stranger as to the employees of the railroad company. *Cox* v. *Railroad,* 1 Shan. Cas., 475; *Railroad* v. *Pugh,* supra; *Todd* v. *Railroad,* 135 Tenn., 100, 185 S. W., 62 L. R. A., 1916E, 555; *King* v. *Railroad,* supra. The mere fact that the party was a trespasser on the track would not prevent his recovery. *Railroad* v. *Fain,* 12 Lea (80 Tenn.), 35. From what has been said, it is apparent that the rights of the parties will have to be determined by the common law. In making this statement, however, we are laying out of view, for the present, the right of action based on the city ordinance, which will be considered later.

Even under the common law it would be the duty of a railway company's servants on the engine to keep a lookout ahead, and also to have reasonable appliances, including a headlight of reasonable efficiency. It would also be the duty of such servants, on the appearance of any obstruction on the track, to use their utmost endeavors to prevent a collision. It would also be their duty to see what could be seen by a person of good eyesight, with the aid of a proper headlight, or a proper light on the back of the engine in case it were engaged in running backwards. *Horne* v. *Railroad,* 1

Cold. (41 Tenn.), 72, 75, 76; *Railroad* v. *Humphreys*, 12 Lea (80 Tenn.), 200, 206; *Railroad* v. *Flemming*, 14 Lea (82 Tenn.), 139, 140; *Railroad* v. *Pratt*, 1 Pick. (85 Tenn.), 9, 13, 14, 1 S. W., 618; *Railroad* v. *Seaborn*, 1 Pick. (85 Tenn.), 397, 4 S. W., 661; *Railroad* v. *Scott*, 3 Pick. (87 Tenn.), 499, 11 S. W., 317; *Patton* v. *Railroad Co.*, 5 Pick. (89 Tenn.), 370, 374, 375, 378, 15 S. W., 919, 12 L. R. A., 184; *Katzenberger* v. *Lawo*, 6 Pick. (90 Tenn.), 237, 16 S. W., 611, 13 L. R. A., 185, 25 Am. St. Rep., 681; *Railroad* v. *Wilson*, 6 Pick. (90 Tenn.), 275, 16 S. W., 613, 13 L. R. A., 364; 25 Am. St. Rep., 693; *Cotton Oil Co.*, v. *Shamblin*, 17 Pick. (101 Tenn.), 271, 47 S. W., 496; *Rapid Transit Co.* v. *Walton*, 21 Pick. (105 Tenn.), 422, 423, 58 S. W., 737; *Railroad* v. *Crews*, 10 *Cates* (118 Tenn.), 52, 99 S. W., 368; *Whittaker* v. *Railroad*, 5 *Thompson* (132 Tenn.), 580, 179 S. W., 140. On the other hand, it was the duty of the defendant in error, occupying, as he did, a dangerous position, and especially at night, on the track of the railroad company within a territory where switching was done and where the operation in question here was nightly performed, and where cars were being constantly transferred to other roads, to constantly look and listen to avoid the danger of a collision. *Todd* v. *Railway Co.*, 8 Thompson (135 Tenn.) 92, 185 S. W., 62, L. R. A. 1916E, 555; *Railroad Co.*, v. *Parks*, 9 Thompson (136 Tenn.), 367, 189 S. W., 695. The plaintiff in error did not look and listen, as the law required of him, and he was therefore guilty of contributory negligence. Should that contributory negligence

Chattanooga Station Co. v. Harper.

be held to bar the action, or be taken only in mitigation of damages? The rule in this State is that when the rights of the parties are to be settled under the statute, which prescribes the precautions that railway companies shall use to prevent collisions on the track, the contributory negligence of the person injured can only be taken in mitigation of damages. On the other hand, when the rights of the parties are to be settled by the common law, the rule is that where the negligence of the party injured contributed proximately to his own injury, either alone, or, generally speaking, in conjunction with the railway company, there can be no recovery; but in case the negligence of the railway was the proximate cause of the injury, and that of the person injured contributed only remotely, then the contributory negligence can be used only in mitigation; but otherwise if the negligence of the party injured was gross, although, in the absence of such degree of negligence on his part, that of the railway company would be treated as the proximate cause.

So in the Todd Case a man who stood upon a railway track, at a crossing, for a considerable time without looking or listening, although in broad daylight, instead of at night, as in the case before us, was held to be guilty of such contributory negligence as that he could not recover. See, also, *Railroad Co.* v. *Parks*, supra. Now, in the present case, the negligence of the defendant in error was even grosser. He was on a track in the station limits of the railway company at night

when it was very dark, and he did not know when an engine or train might appear on the track, and yet he neither looked or listened. We are of the opinion therefore that the peremptory instruction should have been granted, unless the defendant in error's case be saved by the second count. This question we now proceed to consider.

But before going into this matter it is proper that we dispose of the grounds of demurrer assigned to this count of the declaration. The first ground is that the ordinance is addressed solely to the engineer, and therefore not to the company. There is nothing in this point. It was settled, in effect, adversely to plaintiff in error's contention in the case of *Railroad Co.* v. *Haynes,* 112 Tenn., 712, 81 S. W., 374. In that case the Memphis ordinance was addressed to "conductors, drivers etc," but was held to apply to the company itself. To the same effect, see *Grube* v. *Missouri Pacific R. Co.,* 98 Mo., 330, 11 S. W., 736, 4 L. R. A., 776, 14 Am. St. Rep., 645, wherein an ordinance similarly addressed was applied to the company. The second ground of demurrer we think is equally unfounded. There is nothing in the language of the ordinance indicating a purpose to exclude the railway tracks in question, and other tracks in that locality. On the contrary, there are two or three material considerations on which a diverse inference may be safely based. These are: Firstly, the fact that the tracks in question, and other railway tracks lie immediately southeast of King street, according to the map "Exhibit D" fur-

nished us; secondly, that the distinction as to the higher rate of speed permitted in this quarter, as compared with the lower speed enjoined in other parts of the city where there was danger from street crossings, was in all probability accorded to the railway companies as a means of facilitating their business in territory remote from streets, and covered with railway tracks; thirdly that it was proposed to afford some measure of protection to railroad employees whose duties called them into such places, by prescribing a maximum speed which was within the bounds of moderation and safety.

Now returning to an examination of the effect of the ordinance, on the rights of the parties, in the light of the evidence:

There was evidence of a violation of the ordinance, and evidence to the contrary. Under the rule that when considering a motion for peremtory instructions that view must be taken which is most favorable to the party against whom the motion is made, we must hold that the ordinance was violated by the plaintiff in error; that the engine in question was at the time of the injury running in excess of thirteen miles per hour, and hence was violating the ordinance; therefore that the plaintiff in error, in so running the engine, through its servants, was guilty of negligence *per se*. The leading case in our state on this subject is *Queen* v. *Dayton Coal & Iron Co.*, 95 Tenn., 458; 32 S. W., 460, 30 L. R. A., 82, 49 Am. St. Rep., 935. This case has been follow-

ed in *Riden* v. *Grimm Bros.,* 97 Tenn., 220, 223, 36 S. W., 1097, 35 L. R. A., 587. *Wise & Co.,* v. *Morgan,* 101 Tenn. 273, 278, 48 S. W., 971, 44 L. R. A., 548; *Rhea County* v. *Sneed,* 105 Tenn., 581, 586, 58 S. W., 1063; *Iron & Wire Co.* v. *Green,* 108 Tenn., 161, 164, 64 S. W., 399; *Railway Co.* v. *Haynes,* 112 Tenn., 712-723, 81 S. W., 374; *Railroad* v. *Martin,* 113 Tenn., 266, 281, 282, 87 S. W., 418; *Adams* v. *Iron Co.,* 117 Tenn., 470, 477, 101 S. W., 428. And see *Schmalzried v. White,* 97 Tenn., 36, 45, 36 S. W., 393, 32 L. R. A., 782, and *Weeks* v. *McNulty,* 101 Tenn., 495, 502-506, 48 S. W., 809, 43 L. R. A., 185, 70 Am. St. Rep., 693. But it is held that the rule of contributory negligence applies in such cases as in common-law cases. *Queen* v. *Dayton Coal & Iron Co.,* supra. This being true, what has already been said upon the subject of contributory negligence barring the action must apply to this branch of the case as well. So the motion for peremptory instructions must prevail.

Before the final disposition of the case, we shall dispose of an important point of practice which has arisen herein, and has been discussed in the briefs of counsel.

The learned court of civil appeals, as indicated in the beginning of this opinion, reached a different conclusion from that which we have announced. It was there held that the statutory precautions applied, that the plaintiff in error had violated these provisions and was therefore absolutely bound, that the cause should be remanded only for the assessment of dam-

ages, and that defendant in error's contributory negligence should only go in mitigation. The fundamental error of the court of civil appeals, as we think, was in holding that the statutory precautions applied, and in deciding that they had not been complied with. We have stated herein our reasons for holding that these precautions did not apply. The learned trial judge held they did not apply, and took that question from the jury, but submitted the case on the common law, and on the city ordinance, and on these the jury based the verdict on which the judgment below was rested. The jury, having been instructed by the trial judge that the statutory precautions did not apply, could not and did not pass on these precautions. Therefore it was not within the power of the court of civil appeals, or of this court, to pass on these except in relation to a review of the action of the trial judge in overruling the plaintiff in error's (defendant below) motion for peremptory instructions, or his action in withdrawing the particular question from the jury. Under such a state of the record, this issue not having been passed on by the jury, and there being evidence both ways, neither appellate court had power to determine on the evidence that the statutory precautions had not been complied with, and to adjudge the defendant below fixed with liability therefor, justifying a remand only for the assessment of damages. At most, under the state of the record indicated, all that an appellate court in Tennessee could do, in correct practice, was, on finding against the motion for peremptory instructions, to either re-

mand the cause for a hearing by the jury on the matter of the statutory precautions withdrawn from them by the trial judge, and on all the evidence on all the issues, if no ground for affirmance could be found on the common-law aspects of the case, or on the ordinance; or, if such ground of affirmance could be discovered in the common.law or the ordinance, then to affirm .outright; or if no such ground of affirmance could be found, and if the motion for peremptory instructions could not be sustained, then to reverse and remand for a general new .trial; or, if the motion for peremptory instructions should be sustained, then to sustain it, and dismiss the action as we have done. The counsel for the plaintiff in error insisted that there should be either a sustention of the motion for peremptory instructions and a consequent dismissal of the action, or a reversal .and a general remand for a new trial. The counsel for defendant in error insisted there should be a general affirmance. The learned court of civil appeals adopted a middle course, adjudging that the liability for some damages was fixed, because of a violation of the statutory precautions, and remanding only for the assessment of damages; that is, apparently, an affirmance in part, and a reversal in part. The point of practice is an important one. It has heretofore been held (*Perkins* v. *Brown,* 132 Tenn., 294, 177 S. W., 1158, L. R. A., 1915F, 723, Ann. Cas., 1917A, 124) that in a law case the judgment may be affirmed in part, and reversed in part, and a remand ordered only as to the latter. It was under the authority of *Perkins* v. *Brown* that the

Chattanooga Station Co. v. Harper.

learned court of civil appeals considered they were acting or at least within the principle which guided the decision of that case. But, in the case before us, as we think, the principle was not correctly applied, because the learned court of civil appeals, in fixing the liability on the failure to comply with the statutory precautions, neither affirmed any part of the action of the trial judge, nor the judgment based on the jury's verdict, since it appears from the record that the trial judge held that the case was not one covered by the statutory precautions, and so, withdrawing the question from the jury, did not permit that body to pass on it. In this state of the record, an appellate court could not, apart from a consideration of the motion for peremptory instructions, take up this question on which the jury had not passed, and for itself decide it on the evidence, and render a judgment fixing liability on the defendant. That would be the exercise of original jurisdiction, while our appellate courts in this State have only appellate jurisdiction. All an appellate court could do with the particular question, in the state of the record mentioned, would be, as we have pointed out, to consider it in relation to the general motion for peremptory instructions, or in relation to the act of the trial judge in withdrawing the particular question from the jury. Therefore the action of the court of civil appeals in this case in reversing in part and remanding in part was clearly erroneous.

Chattanooga Station Co. v. Harper.

In accordance with this opinion, it is apparent that the judgment of the trial court must be reversed, and that of the court of civil appeals must be modified and reversed and the suit dismissed, with costs against the defendant in error.