## CLINCHFIELD R. CO. et al. v. HARVEY et al.

Eastern Section. March 16, 1932.

Petition for Certiorari denied by Supreme Court, December 17, 1932.

J. J. McLaughlin and Cox, Taylor & Epps, all of Johnson City, for plaintiffs in error.

Miller & Winston, Guy S. Chase, and Geo. N. Barnes, all of Johnson City, for defendants in error.

PORTRUM, J. This is a suit by a boy ten years of age to recover for the loss of four fingers on his left hand, which were mashed by the wheels of a box car when he placed his left hand between the wheels and under the car to pick up a piece of loose coal, the car being bumped and started in motion while his hand was under the car. The boy claims that two isolated freight cars were standing near a crossing, on a siding in the yards of the railway company; that he and three young companions were gathering coal from the yard, with a toy wagon, belonging to one of the other boys, and a sack. He was pulling the wagon in a path or roadway by the side of the track; seeing this coal he left his wagon by the side of the track and in this roadway, and knelt down and reached between the wheels and under the car to pick up this lump of coal. There was no engine attached to the cars at this time, but before he retrieved the coal an engine bumped the cars and set them in motion, and the wheel ran over his hand before he could drop the coal and extricate his hand and arm. The facts of the case are peculiar, for the company's defense is that the theory of the plaintiffs is untrue; that there were no two box cars sitting at the place of the accident at the time of the accident, and that the plaintiff was injured by placing his hand under the wheel of the tender on the engine, or by attempting to swing a car in the moving train as it passed the place of the accident. But if the theory of the plaintiff is true, then the witnesses of the defendants make out a case of liability. Therefore, the issues in this court are narrowed materially to the question, Is there any evidence to support the theory of the plaintiffs?

The father of the boy, basing his claim upon the same cause of

action, sues to recover medical expenses and loss of services, and the two cases were tried together upon one record, but an appeal was prosecuted in both, on but one assignment of error. The only independent issue raised upon the father's suit was his negligence in permitting the boy to go upon the track to gather coal.

The theory of the plaintiff is that the facts bring the case within the doctrine of the last clear chance, and establish liability. This theory is based upon the first count in the declaration; there is also another count predicating liability upon the breach, or the failure of the company to comply with the city ordinance requiring a lookout and the ringing of the bell at the approach of this crossing by a moving train or engine. The company's proof upon this issue is not favorable to the plaintiff.

The plaintiff Howes Harvey left his home about a mile from the place of the accident about five or 5:15 o'clock in the afternoon of October 24, 1930, to accompany three neighbor boys of about the same age to the railroad yards for the purpose of aiding them in gathering loose coal. One of the boys had a small wagon and another a sack. They followed the street to the yard and went near the Bowman street crossing, and began playing tag around and over two box cars parked on the siding forty or fifty yards from the crossing. The plaintiff played around, but did not go upon the cars. Two of the other boys did, and the reason the plaintiff did not was because he was afraid of being tagged. The boys played ten or more minutes when the plaintiff, tiring of the game, took the small wagon and started along the track towards the crossing for the purpose of gathering coal. His companion, Junior Ross, who owned the wagon, quit the game and followed along. When the plaintiff was on the roadway between two tracks used by wagons in hauling freight, and was a walkway, and which connected with the street crossing, he saw the two box cars and the lump of coal under one of them. He says the box car was within six feet of the iron rails placed between the rails of the track to raise the roadway of the crossing on a level with the rails of the track. These rails were thirty-three feet in length, and vehicles used this portion of the track as the street crossing, but the street was irregular in width and at this point was perhaps fifty feet wide, but no provision was made for a greater space than thirty-three feet at this track, while at other tracks where the street passed over a wider passway was made. At the point designated by the boy he was within the confines of the street, but was six feet away from the iron railing used as the passageway for vehicles. He also states that at the time he started to pick up the coal there was no engine attached to the two cars. As stated, he left his wagon to the side of the track, knelt down, and reached under to pick up the coal, and the car was bumped and he received the injury. At this time

the Ross boy was standing at the crossing, and the plaintiff ran from the place of the accident to the Ross boy and then to an employee of the Standard Oil Company nearby, and requested the employee to take him to the hospital, which he did. The plaintiff states the accident occurred about six o'clock. The father testified that after some delay he was notified and appeared at the hospital about seven o'clock, when the boy's mashed fingers were removed. The father also states that he went to the place of the accident on the next day, and the engineer pointed out some blood and flesh where the engineer said the accident occurred. This was thirty or thirty-five feet from the iron rail of the crossing. The roadway at this place was straight.

The Ross boy, who was a witness for the plaintiff, testified that he was at the crossing at the time of the accident; that he saw the two box cars standing at the place stated by the plaintiff, and that no engine was attached. That an engine coupled up with them and pushed them across the crossing and down the track. That the plaintiff ran up to him with his injured hand and then ran away so fast that he and the other two boys could not catch him.

The defendants' witnesses testified that there were not two cars standing on the track at this place and at this time; that an engine with eight or ten cars was standing on the siding, waiting for a passenger train to pass, which did pass, and this train pulled out about seven o'clock; that the switch engine was backing, pulling these cars, but there was a headlight on the tender, which was burning, and the engineer and fireman were on the lookout. Also a brakeman, who threw the switch about thirty-five feet from the crossing, was standing on the crossing as the engine approached the crossing, and that a bell was ringing. The engineer was asked if the boy was at the place he said he was, stooping down under a car to pick up a lump of coal, could he have seen him, and the engineer replied, "Good smooth place there, and all four could have seen." The four referred to was the train crew. He said he could have seen the boy if the boy's legs were protruding from the car, or unless he was under the car, and in that case he could not have escaped. But the engineer stated further: "But he wasn't there, I don't reckon?"

We should have stated that the Ross boy testified that the bell of the engine was not ringing when it bumped into the cars. If the theory of the plaintiffs is true, then the engineer bumped into these cars without ringing the bell, or seeing the boy crouched under the car and his wagon by his side. However, it is said the plaintiff was a trespasser and the company owed him no duty other than not to willfully injure him. Is there any evidence bringing home to this train crew the knowledge of this boy's presence upon the

yards, and a corresponding duty to look out for him, even though he be a trespasser.

The switching crew had been engaged in shifting cars upon the yards all afternoon, and two of the crew saw these boys playing tag on the box cars within the yards. The conductor on this train testified that it was customary for trespassers to gather coal upon the yards; that he had seen men, women, and children gathering coal within one hundred feet, fifty feet, and thirty feet of the place of this accident. At the place of the accident the roadway extended up to the ends of the ties and was filled in with gravel, making it level, and at the place the road crew should have expected to have found trespassers and licensees, and should have been aware of this hazard. None of the train crew knew of the accident until the next day, and they say the accident happened at seven o'clock, after the passenger train had passed on the main line, and when the train pulled away. The company put on as a witness one of these boys who had accompanied the plaintiff; he testified he did not see a passenger train pass before the boy was injured.

The jury adopted the theory of the plaintiff, and it does not necessarily follow that the jury disbelieved the evidence of the defendants, for the child could have been injured in another movement than that testified to by the defendants' witnesses. The plaintiff and the Ross boy, who was thirteen years of age, were intelligent witnesses, and their stories were not broken down or impaired by cross-examination. Certainly this court is not warranted in saying the jury should have disbelieved them and have adopted the testimony of the defendants' witnesses, especially when it was possible to reconcile it. The court should not have done this and taken the case from the jury upon the motion for a directed verdict, if upon the theory liability existed against the railway.

Was it the duty of the train crew to look out for trespassers, in the movement of the train, with this knowledge in their possession: That men, women, and children gathered coal upon these yards, and had been seen as near as thirty feet at the place of the accident; that the train crew had seen these boys playing in the yards and upon the cars within fifty yards of the place of the accident; and the accident occurred while the boy was upon a well-defined roadway used by wagons and pedestrians and within six feet of a public crossing? And the admission of the engineer if he had looked he could have seen the boy in the position he was at the time of the accident, and his wagon at the side. Under such circumstances we are of the opinion that it was the active duty of the train crew to look for such trespassers, especially when they were aware of the presence of children upon the yards. A failure to look under such circumstances is a willful disregard of the safety of children.

"It is on such considerations that cases composing an exceptional class have been determined. We refer to those instances where the defendant is engaged in a business hazardous to the public in certain aspects, such as that of operating dangerous instrumentalities, and where, therefore, the law imposes the duty on the defendant continuously to anticipate that some other (plaintiff) may negligently subject himself to a peril from defendant as a source; the latter having control of some instrumentality that has inherent potentiality of danger. Such a defendant is precedently, and continuously to the moment of injury, under the duty of lookout for the other, and his or its negligence in failing to discover the exposure of such a plaintiff and averting injury by the exercise of ordinary care is on grounds of policy considered to be proximate cause. The law in such case conceives of the negligence of the plaintiff as being remote; it may be in disregard of logic or of actual causation. It is assigned that status in the law's regard by reason of the policy of the law, though it may be that from the standpoint of actuality of cause the plaintiff's negligence is concurrent with the defendant's to the moment of injury." Todd v. Railroad, 135 Tenn., 106, 185 S. W., 62, 65, L. R. A., 1916E, 555.

This rule would not apply if the plaintiff was also grossly negligent as a matter of law. Tennessee Central Ry. v. Ledbetter, 159 Tenn., 404, 19 S. W. (2d), 258. But with children gathering coal upon a railroad yard with the knowledge of a company, it is not unreasonable to require the company to anticipate that the children may reach under cars to gather coal, and the fact that the children did do this would not excuse the company from keeping a lookout for them. If a fair-minded person can anticipate that children might do this when attracted by a large lump of coal laying between the rails or under a car, then the act of the child cannot be classified as gross negligence, when it might be if done by an adult. This raises an issue for the jury to determine, and the judge would not be warranted in classifying this act as one of gross negligence on the part of a ten year old child. We are of the opinion the case should have been submitted to the jury, as it was.

There are several assignments based upon the charge of the court. These assignments attack that part of the charge which has reference to the case submitted under the second count of the declaration, because it is insisted this accident did not happen at a crossing, and the ordinance had no application. That the duties required by the ordinance were for the protection of pedestrians and vehicles using the crossing. This portion of the charge was given by the trial judge upon the theory that there was an issue of fact as to whether or not the accident happened at a crossing; if this were a legitimate issue of fact presented upon the trial, then there was no error in the judge's charge. But if it were not a legitimate issue,

then it was not affirmative error, because the verdict can be rested upon the first count of the declaration. When this is true, error in the charge upon a second count may be disregarded. Tennessee Central Ry. Co. v. Umenstetter, 155 Tenn., 235, 291 S. W., 452.

There is some criticism of the charge in other respects because the court did not add qualifying phrases to sentences defining rules of law. We think this criticism is too supercritical, for the trial court cannot be expected in every instance to state all the exceptions to a rule of law, and when the charge taken as a whole is a fair statement of the rule.

There is an assignment of error that the court erred in allowing plaintiff four peremptory jury challenges. The record does not show that the plaintiff used any of his challenges.

The father, S. T. Harvey, recovered a judgment in his suit for $75. There is an assignment of error that his right of recovery is barred because of his contributory negligence, and the judge should have sustained the motion for peremptory instructions. The father left home in the afternoon, leaving this boy and two older boys, and two younger children, in the house, the mother had stepped out and was not at home when the father left. But the boy was not sent by the father to gather coal on the railway yards, and the father had no knowledge he was going to accompany these other boys to the yards to gather coal. This was the first time the boy had ever accompanied these boys, or any other boys to the yards to gather coal, and it was the first time he had gone to the yards for this purpose. We do not think it was negligent as a matter of law for a man to leave these children of this age at home, after they had returned from school, without a custodian. People of ordinary prudence allow their children some liberty after school hours, and it was a question for the jury to settle this issue.

There is an assignment of error that the verdict in favor of the boy is excessive. He recovered $3,500. At the time of the accident this boy was ten years of age and in the third grade at school. He was an intelligent witness, and, notwithstanding his age, he is chargeable with remote negligence in reaching under this car for the coal when the engine must have been close at hand; he was evidently aware that there was some danger in it, but perhaps he thought he could get the coal without any serious injury. We cannot acquit him of all consciousness of danger, but must charge him with remote negligence which as a matter of law mitigates his recovery. This rule is applicable to the doctrine of the last clear chance. Chattanooga Station Co. v. Harper, 138 Tenn., 577, 199 S. W., 394. We suggest a remittitur of $1,000, reducing the judgment to $2,500, and, if accepted, the judgment of the lower court is affirmed.

Snodgrass and Thompson, JJ., concur.