**LAWSON v. TENNESSEE, A. & G. RY. CO.**

**No. 10251.**

Circuit Court of Appeals, Sixth Circuit.

Jan. 13, 1947.

Harry Berke, of Chattanooga, Tenn. (Berke & Fleming, of Chattanooga, Tenn., on the brief), for appellant.

Sizer Chambliss, of Chattanooga, Tenn. (Chambliss & Chambliss, of Chattanooga, Tenn., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Appellant complains of a directed verdict in favor of appellee. The facts are undisputed.

On July 15, 1945, at approximately 4:05 A.M., appellant's intestate, Kirk Eugene Lawson, eighteen years old, was struck and killed by a train operated by appellee; hence this suit for damages.

Appellee operated a train daily from Gadsden, Alabama, northwardly to a point in Chattanooga, Tennessee, and the accident happened within the corporate limits of that city. The end of the run was at 47th Street, also called Alton Park. At the 47th St. crossing appellee had a dispatcher's office and its inspectors were stationed there and following the usual custom the train here involved was there inspected and broken up. The rear portion, including the caboose, was left on the south side of 47th St. in charge of the conductor and the engine with seven cars attached proceeded northwardly over intervening street crossings to 43rd St., also called Highland Avenue. As the train proceeded from 47th St. at about four or five miles an hour, Dover, a brakeman, who also acted as a switchman, rode on the front pilot step of the engine on the right, or engineer's side. As the train passed over the street intersections, Dover watched to see that no traffic was approaching from either direction. A switch was located about 30 or 35 feet north of the center of 43rd St. (Highland Avenue) and on the right side of the main track. The purpose of this switch was to deliver cars on to and to pull them out from the "scale" track, which was parallel to the main line and ran southwardly across 43rd St. At or near the scale track switch was another parallel switch track called the "Hold" track, used for the purpose of holding cars switched from the main line.

After the front of the engine passed 43rd St., Dover, carrying a light, began looking for the scale track switch. The purpose of the operation was to allow the engine with the seven attached cars to run forward until the switch was cleared, when Dover would turn it and the engine would

back the cars off the main line on to the scale track, where some of them were to be weighed and from which others were to be moved on to the hold track.

As Dover was in the act of swinging off the pilot step near the switch, he saw Lawson lying, on the fireman's side, near the outside of the left rail, and saw him raise his head. At that time Lawson was approximately four feet in front of the engine. Dover knew that Lawson would be struck, and that fact together with his efforts to balance himself to prevent running into the switch stand, naturally excited him. It is not entirely clear what part of the engine struck Lawson, but from our viewpoint this is not material to a determination of the issues presented.

The complaint has two counts, the first of which charged, appellee with common law negligence; and the second, that it was operating its train in violation of Sec. 2628(4) of the Code of Tennessee (Williams' Code). In Callaway v. Christison, 6 Cir., 148 F.2d 303, we quoted and commented upon this Section, together with its concomitant Sections 2629 and 2630. We do not extend that discussion for we regard these statutory precautions as inapplicable. Upon the undisputed facts appellee was not required to observe them when its employees "are engaged in the distribution of detached cars, in the 'making up' of trains, and in other necessary switching, in and upon its yards, depot grounds, and sidetracks * * *. The common law, and not the statute, prescribes the rule of action for railway companies in such situation." Railroad v. Pugh, 95 Tenn. 419, 421, 32 S.W. 311, 312. The Pugh case was decided October 15, 1895, and has since been followed. See also King v. Tennessee Cent. Railroad, 129 Tenn. 44, 51, 164 S.W. 1181, 51 L.R.A.,

N.S., 618; Chattanooga Station Co. v. Harper, 138 Tenn. 562, 577, 199 S.W. 394.

It is indisputably true that at the time Lawson was struck the train was engaged in switching operations and nothing more, so that the rights of the parties must be determined by the common law and not by the statute.

Appellant invokes the doctrine of the last clear chance. He points out that Dover discovered Lawson's peril before the front of the engine reached him and failed to take any preventive measures by warning signals or otherwise. We find no occasion to comment at length upon the theory of the last clear chance. A splendid statement of it is found in Todd v. Cincinnati, N. O. & T. P. Ry. Co., 135 Tenn. 92, 185 S.W. 62, L.R.A.1916E, 555.

There is no evidence of conscious misconduct by appellant's servants after the discovery of Lawson's peril. When deceased's presence was disclosed, the front of the engine, which was running four or five miles an hour, was within three or four feet of him. There is no evidence that any protective measures could then have avoided the accident. But if we assume that it might have been avoided, appellant is in no better light for it is undoubtedly true as a matter of law that Lawson was guilty of contributory negligence in lying down at night within the sweep of the train; and that his negligence continued until he was struck, and was a causal if not the foremost factor leading to his death. Upon the undisputed facts there can be no recovery upon any view that might be taken of the doctrine of the last clear chance or discovered peril. Todd v. Cincinnati, N. O. & T. P. Ry. Co., supra.

The judgment was correct and is affirmed.