Alabama & Vicksburg Railway Company *v.* B. G. Cox.

[63 South. 334.]

1. RAILROADS. *Obstructing crossings. Application of statute. Trial. Instructions. Error cured. Punitive damages. Code 1906, section 4049.*

   Section 4049, Code 1906, providing that railroads on stopping a train across a public highway shall uncouple and not block the highway longer than five minutes, was intended to prevent the voluntary blocking of public crossings and has no application to a case where the railroad in good faith tried to remove the blockade and reasonably believed they could do so within five minutes though in fact it took a longer time to do so.

2. TRIAL. *Instructions. Harmless error.*

   Where the instructions for the plaintiff are in direct conflict with the instructions of defendant on a material point the court on appeal will not approve the verdict of the jury upon the theory that conflicting instructions are harmless.

3. DAMAGES. *Punitive damages. Instructions.*

   An instruction that if defendant acted in reckless disregard of plaintiff's rights, the jury may award him punitive damages and that punitive damages are such as will not only compensate plaintiff for his actual damages sustained, but will also make defendant have due regard for other's rights in the future, does not correctly state the rule.

APPEAL from the circuit court of Rankin county.

HON. C. L. DOBBS, Judge.

Suit by G. B. Cox against the Alabama & Vicksburg Railway Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*R. H. & J. H. Thompson,* attorneys for appellant.

*A. J. McLaurin,* attorney for appellee.

COOK, J., delivered the opinion of the court.

One of appellant's locomotives while pulling a string of freight cars jumped the track, leaving the cars on,

and obstructing the crossing of a public highway. Appellee was driving a buggy along the highway, and was prevented from crossing the railroad track by this obstruction. The time elapsing between the arrival of appellee at the crossing and the time he succeeded in getting by the obstruction was something like two hours and a half. It is claimed by appellee that there was a loose engine at the scene when he arrived, and that it would have been an easy matter for the employees of the railroad company to have used this engine to pull the cars back from the crossing. Instead of doing this, the loose engine spent all this time in an effort to pull the derailed locomotive upon the track. The great preponderance of the evidence, however, is to the effect that the loose engine arrived about forty minutes before the derailed engine was pulled upon the track. Appellant's employees testified that they had every reason to believe that the derailed locomotive could be pulled on the track within five minutes after the arrival of the other locomotive, but because of a miscarriage of their plans and the jamming of the "frogs" under the wheels of the locomotive, it took much longer to accomplish the job than they anticipated. In other words, it is the contention of appellant that its employees did everything within their power to get the locomotive back on the rails so that it might pull the cars off the crossing.

In this state of case, appellee asked for and was granted the following instructions:

"(1)   The court instructs the jury that the law requires every railroad company, upon stopping any train at a place where said railroad shall cross a highway, shall uncouple its cars as not to obstruct travel upon said highway for a period longer than five minutes.

"(2) If the jury believe from the evidence that the defendant railroad company's servants failed to comply with the law, and that plaintiff was thereby impeded in his travel upon the public road, the jury may find for

plaintiff, and award him such damages as the jury may believe from the evidence he is entitled to, not to exceed two thousand dollars, the amount sued for.

"(3)   If the jury believe from the evidence that the plaintiff was unlawfully impeded in his travel upon said road by defendant, the failure of defendant's servants to see plaintiff upon said road would not entitle defendant to a verdict in this case.

"(4)   The court instructs the jury that if the jury find for plaintiff, they must award him such actual damage as they believe from the verdict he has sustained; and, if they believe that defendant acted in reckless disregard of the rights of plaintiff, they may award plaintiff punitive damages.

"(5)   The court instructs the jury that punitive damages are such as will not only compensate plaintiff for the actual damages sustained by him, but will also make defendant have due regard for the rights of others in the future."

Among other instructions for defendant, the court gave this instruction: "The court instructs the jury that the plaintiff cannot recover in this case because the engine was derailed; nor because the highway was obstructed and plaintiff's travel delayed more than five minutes; nor can he recover in the absence of evidence showing to their satisfaction that the defendant, under all the circumstances of the case, kept the highway obstructed for an unreasonable length of time."

We do not think the five-minute statute is applicable to the facts of this case. This statute was evidently intended to prevent the voluntary blocking of public crossings. It is contended, however, that the above-quoted instruction cured the error of the court in giving the instructions for plaintiff.

The instructions for plaintiff are in direct conflict with the instructions for defendant, and we cannot approve the verdict of the jury upon the theory that conflicting instructions are harmless.

We express no opinion as to the propriety of instructing the jury upon the doctrine of exemplary damages, except to say that the instructions given do not correctly state the rule.

*Reversed and remanded.*