WEST BROS. OF PASCAGOULA, MISS., INC. *v.* DICKENS

No. 43794 February 21, 1966 183 So. 2d 480

*P. D. Greaves, J. C. Seaman, Jr.,* Gulfport, for appellant.

*Pittman, King & Pittman,* Hattiesburg, for appellee.

ROBERTSON, J.

Appellee, Mrs. Beatrice Dickens, sued the appellant, West Bros. of Pascagoula, Miss., Inc., a Corp., d/b/a Gibson's Discount Center for damages sustained when she tripped and fell over a flat display counter located at the end of a gondola-type display counter. The jury returned a verdict for $10,500.00 damages, and the appellant appeals to this Court.

The appellant assigns as errors: the refusal to grant a peremptory instruction for the defendant, the granting of certain instructions for the appellee, the verdict of the jury is against the overwhelming weight of the evidence, and the verdict of the jury is so grossly excessive as to show bias, passion and prejudice in favor of the plaintiff.

On August 2, 1963, the appellee had gone with her husband to Gibson's Discount Center to look around and to shop.

This was a brand new store having been formally opened for business the day before, and the crowds were large on both days. The store fronts south and the appellee, upon entering the store, had proceeded to the right and then had proceeded north up the last aisle lined with display counters on both sides of the aisle.

She had picked up a boxed toaster and continued to look at the wares and merchandise displayed on the counters. The record reflects that the gondola-type counters were filled with merchandise, and the height of these counters was variously estimated at four to six feet high. As the plaintiff reached the end of a long gondola-type counter, she rounded the corner to the left and tripped over a flat display counter, which was 8

inches high, 49 inches wide and 30 inches deep. By *deep* is meant the distance from the gondola-type counter, which this flat display counter adjoined, to the edge of the flat display counter. These flat display counters were used to display bulky items of merchandise which would not fit on the shelves of the gondola-type counters. The merchandise on this particular flat display counter had all been sold either on the opening day or the morning of the second day, and the counter was empty at the time the plaintiff tripped over it. She was immediately helped to her feet and proceeded to find her husband, pay for the toaster and leave the store.

She went to see a doctor for the first time on August 19, 1963, seventeen days after her injury. She visited Dr. Herbert Robinson in Pascagoula on August 19 and 23, 1963, and shortly thereafter, she and her family moved to Hattiesburg. Dr. Robinson treated her for a soft tissue injury — blueness of skin — beneath her right kneecap and a small abrasion over her right knee. There was some slight swelling around both knees, but no fracture or dislocation of bones. The doctor suggested physical therapy for two days, and if there was no improvement, he suggested that the appellee see an orthopaedic surgeon. The appellee was later treated by Dr. Francis Conn, an orthopaedic surgeon, and Dr. Harry Fridge, her family doctor, in Hattiesburg.

However, on the trial of this case in Pascagoula only Dr. Herbert Robinson testified. He testified about the bruise beneath the right knee, the slightly swollen condition of both knees, and that the appellee did complain of some pain in her back. He did not examine her back because she had been complaining of back trouble for the past four years.

All of the special expenses of the appellee, including the bills of Dr. Conn and Dr. Fridge, drug bills, physical therapy, and even $22.04 for taxi fares for going to and from the doctor's office, totalled $282.14.

The appellee testified that she was unable to do her normal housework; that she lost a lot of sleep on account of her injuries; that she had difficulty in remaining on her feet or walking for any length of time. Her husband, who worked for Ingalls Shipbuilding and was home only on the week-ends, and her teenage daughter, testified that they would rub her legs with alcohol to relieve the pain, and that she was not able to do all of her normal housework.

 █ We agree with the appellant that the $10,500.00 verdict of the jury is grossly excessive and evinces bias, passion and prejudice in favor of the appellee. The amount of the verdict is strongly indicative that the jury was misled and confused by some of the instructions granted the plaintiff, instructions which were in hopeless and irreconcilable conflict with instructions granted the defendant.

One of the instructions which we feel was not based on the facts or the law and which confused and misled the jury was the following:

"The Court instructs the Jury that if you find for the Plaintiff you may consider in arriving at the amount of the monetary sum to be awarded, the decreasing and decreased purchasing power of the dollar, and to add additional sums to the verdict in order to compensate the Plaintiff for her damages, if any, for this decreasing purchasing power of the dollar."

 █ This instruction is calculated to deliberately encourage the jury to increase or pad the damages because of matters aliunde the record. We feel that the granting of this instruction alone is a fatal error and would justify the reversing and remanding of this case; but there are other fatal errors in at least two other instructions which were granted the plaintiff. These two defective instructions are:

"The Court instructs the jury that the law requires the Defendant to *at all times keep its premises in a*

*reasonable safe condition for its patrons,* and in this case if you believe from a preponderence of the evidence that the Defendant failed in its duty and did negligently cause to and did leave one of its movable platforms unattended *that extended partially out into its aisle where Plaintiff was shopping thereby creating a dangerous hazard,* and you further believe *that the Plaintiff stumbled over the said platform causing her to fall to the floor with such force and violence* that she suffered injuries and damages, if any, then it would be your sworn duty to find and return a verdict for the Plaintiff.''

''The Court instructs the Jury that *the Defendant has a duty to every person entering upon its premises for the purpose of transacting business to keep its premises in a reasonably safe condition and to avoid accidents and injuries to those properly entering upon said premises on business,* and in this case, if you believe from the evidence that the Plaintiff had entered upon the Defendant's premises on business *then it was the duty of the Defendant to keep its premises in a reasonably safe condition so as not to expose Plaintiff to unreasonable risks,* and if you further believe that the Defendant negligently caused to and did leave a movable stock counter described as being about five inches above the level of the floor *and partially blocking the aisle thereby creating a dangerous hazard,* and as result thereof Plaintiff stumbled over said platform or counter causing her injuries and damages, if any, then it would be your sworn duty to find and return a verdict for the Plaintiff assessing her all damages allowed by law.'' (Emphasis added.)

These instructions do not correctly state the rule laid down in many Mississippi cases defining the duty of a storekeeper to its patrons. In Wallace v. J. C. Penny, Co., Inc., 236 Miss. 367, 377, 109 So. 2d 876, 880 (1959), this Court said: ''A store keeper owes to a customer the

duty to exercise ordinary care to have his building in a reasonably safe condition. But he is not the insurer of the safety of his customers.''

This further language in the instruction last above quoted: ''and if you further believe that Defendant negligently caused to and did leave a movable stock counter described as being about five inches above the level of the floor and partially blocking the aisle thereby creating a dangerous hazard, . . . .'' draws conclusions for the jury that are not correct statements of the law and are calculated to mislead and confuse the jury.

The appellee contends that the jury could harmonize the instructions for the plaintiff and defendant, and that any error would be thus eliminated or corrected in the minds of the jurors. We are unable to agree with this argument.

As was said in the case of Alabama & V. Ry. Co. v. Cox, 106 Miss. 33, 35, 63 So. 334, 335 (1913), ''The instructions for plaintiff are in direct conflict with the instructions for defendant, and we cannot approve the verdict of the jury upon the theory that conflicting instructions are harmless.''

It is clear to this Court from the grossly excessive verdict brought in by the jury, that the jury was misled and confused by these erroneous instructions. The amount of the verdict shows bias, passion and prejudice in favor of the plaintiff and against the defendant on the part of the jury.

We are of the opinion that the judgment of the lower court should be reversed and the cause remanded for a new trial on all issues.

Reversed and remanded.

*Ethridge, C. J., Gillespie, Rodgers and Jones JJ.,* concur.